BECK *v.* BATES.

5-3581                                    390 S. W. 2d 103

Opinion Delivered May 24, 1965.

*Harold L. Hall,* for appellant.

*Reed Williamson,* By: *Lesly W. Mattingly,* for appellee.

PAUL WARD, Associate Justice. On September 19, 1964, the parents of six minor children herein involved met their death under tragic circumstances. The children (all girls except one) ranged in age from thirteen months to thirteen years.

On September 29, 1964 John R. Beck (a resident of Little Rock and an uncle of the children) filed a petition in Probate Court which named as the nearest of kin the following:

Mrs. L. H. Betts, Maternal Grandmother, Norwich, England

Mrs. Lee Beck, Paternal Grandmother, Booneville, Arkansas

John R. Beck, Uncle, Little Rock, Arkansas

William J. Beck, Uncle, Benton, Arkansas

Rex Beck, Uncle, Stinnett, Texas

Ray Beck, Uncle, Bossier City, Louisiana

Geneva Parsons, Aunt, Lakewood, California

Bessie Nelson, Aunt, Red Bluff, California.

The prayer was the Rex Beck be appointed guardian of the person and estate of each of said minors with authority to remove them to his home in Stinnett, Texas, "so that he can keep them in his home and thereby properly care for and educate them. . . ."

To the above petition a response was filed by Mr. and Mrs. L. H. Betts (maternal grandparents of the minors) and Rev. B. Franklin Bates (formerly appointed temporary guardian of the minors) in which it was alleged: The minors desire to live with their maternal grandparents in Norwich, England who are willing and able to provide them with a suitable home and to properly educate and care for them; it is desired to have Rev. B. Franklin Bates appointed permanent guardian so that he may return the children to Norwich, England and place them under the care of their grandparents. The prayer was that the petition filed by Rex Beck be denied; and, that Rev. B. Franklin Bates be appointed permanent guardian of the children with power to take them to their grandparents in Norwich, England.

After hearing the testimony of several witnesses the trial court (on October 9, 1964) found and ordered: It will be for the best interest of the children to appoint Rev. B. Franklin Bates of Jacksonville as permanent guardian of their persons and estates; it would be for the best interest of the children to allow them to be removed to Norwich, England and placed in the care of their maternal grandparents; and, the guardian is directed to make a full account of his actions.

The decisive question involved is whether the trial court erred in directing and empowering Rev. Bates (as guardian) to take the children to England and deliver them to their maternal grandparents. For several reasons we think the court acted properly. In the first place, appellant having withdrawn his petition to have Rex Beck appointed guardian, we find nothing in the record to indicate that anyone else (including relatives) is ready, able and willing to take and look after the children. On the other hand, it is undisputed that the maternal grandparents want the children and are able to provide them with a good home. If appellant or any other relatives had a better plan—or any plan—for taking care of the children, they failed to reveal it to the trial court. In support of the trial court's decision, we also point out certain facts and circumstances revealed by the record. (a) The children (or some of them) had formerly lived with their grandparents in Norwich, England. Two of them had gone to school while living there — one for four years and the other for two or three years. (b) The children will not be *sent* to England but will be taken there by Rev. Bates who will have an opportunity to observe the home and surroundings in which the children would live, and who testified he would see that all legal arrangements would be made for the protection of them and their property. (c) The grandparents state they are ready, able and willing to take the children and look after their best interests, and the record reveals they have kept in constant (almost weekly) touch with the children during recent years, and they have frequently sent them presents.

As to the jurisdiction and power of the trial court to commit the children to the care and custody of their grandparents in England, we refer to the statement in Annot., 15 A.L.R. 2d 444 (1951) which reads:

"Upon showing of circumstances which would better promote the welfare and interests of the child, the courts have not hesitated to award the custody of a child to a nonresident, or to permit a resident custodian to remove the child to another jurisdiction . . . ."

The rule or principle above set out is held to apply where the child is removed to another country. See *Wilson* v. *Mitchell,* 48 Colo. 454, 111 P. 21, 30 L.R.A. N.S. 507, the cases cited therein, and also 12 R.C.L. 1174, Guardian and Ward, Foreign Guardians § 65.

There was no error in allowing the introduction of a doctor's certificate which established the death of the parents of the children. It was necessary to establish the reason for the guardianship proceedings, and no one questioned the death of the parents.

Certain letters were offered in evidence by appellees but, upon objection by appellant, the letters were not admitted. It is contended, however, by appellant that the trial court read the letters, and that this constituted reversible error. Conceding for the purpose of this opinion, the court should not have read these said letters, yet, we think no possible prejudice has been shown. When the objection was made the trial court stated: "I did not read them. I glanced at portions of them."

It follows therefore that the order of the trial court must be affirmed.

Affirmed.