In re the **MARRIAGE OF** Scott A. **SIMMONS,** (Petitioner),

and

Debra D. Simmons, Appellant (Respondent),

Jerry Simmons and Darlene Simmons, Appellees (Intervenors).

No. 2–285–A–53.

Court of Appeals of Indiana, Second District.

Dec. 30, 1985.

---

Kevin A. Holloway, Indianapolis, for appellant (respondent).

Ronald L. McNabney, Anderson, for appellees (intervenors).

BUCHANAN, Chief Judge.

## CASE SUMMARY

Respondent-appellant, Debra Simmons (Debra), appeals the trial court's entry of a custody decree which deprived her of the custody of her two minor children by awarding custody to the intervenor-appellees, Jerry and Darlene Simmons [hereinafter collectively referred to as the Grandparents], claiming the trial court's decision to modify its prior custody order consti-

tutes an abuse of discretion in that the change of custody is not supported by the evidence and is contrary to law.

We reverse.

## FACTS

The evidence most favorable to the trial court's judgment reveals that the marriage of Debra and Scott Simmons was dissolved on January 22, 1984; Debra was awarded custody of their two daughters (four and five years old in 1985). In the latter part of May, 1984, an incident occurred which caused Debra to believe that her older daughter, age four at the time, might have been sexually molested while in the custody of her father. Debra took the child to the hospital, but tests revealed no evidence of sexual molestation. The incident, however, was reported to the Anderson Police Department and was investigated by Detective Dale Koons (Koons). In an interview with Koons, the child indicated that she had knowledge of sexual intercourse and had participated in an act of intercourse with her father. As a result of this investigation, Scott took a polygraph exam and a voice analysis test. Scott denied the allegations and passed both exams. While no criminal charges had been filed, on June 8, 1984, Debra filed a petition to suspend Scott's visitation privileges. Without a hearing, the court entered an emergency order granting Debra's request on the same day.

Ten days later, the Grandparents, Scott's parents, filed a petition in which they sought to be awarded the custody of Scott and Debra's daughters or, in the alternative, to be awarded specific visitation rights as the paternal grandparents. Sometime later, the court granted the Grandparents' motion to intervene. At a hearing on August 30, 1984, the court revoked the order suspending Scott's visitation privileges and granted the Grandparents' request for specific visitation, to coincide with Scott's reinstated visitation privileges.

A hearing was ultimately held on the Grandparents' petition to obtain custody on January 17, 1985. In support of their peti-

tion for custody, the Grandparents presented evidence concerning events and circumstances that occurred *prior* to the divorce and the existing custody decree. For example, the Grandmother testified that while Scott and Debra were married and still living together she babysat for the girls almost every day while both parents were at work. She also testified that Debra was a poor housekeeper. To establish Debra's poor housekeeping habits, the Grandmother explained that she had visited Scott and Debra's home quite a few times and described one visit in particular. When she arrived at the home, Scott was at work. She found Debra asleep, the girls playing, and the house in disarray. Not only had the girls made a mess while playing and while attempting to help themselves to something to eat, there were also dirty dishes and leftovers stacked around the kitchen, four or five bags of trash on the floor by the door, and laundry that Debra had failed to put away after returning from the laundromat. Another witness, Karen Brown (Brown), testified that Debra had lived in two different residences during her separation from Scott, pending the divorce. Brown testified that during this period she had been in one of the residences on two occasions and that, on each, the place was strewn with laundry stacked in piles around the house. Brown stated that some of the laundry was dirty, but that most of it was unfolded, freshly laundered clothing. Brown also testified that on one of the occasions the girls were awake and playing, although Debra was asleep.

Evidence of more recent vintage was also presented: that is, evidence of circumstances *since* the divorce and existing custody decree. The Grandparents testified that, since the divorce, the girls had spent a few periods of up to a week at their home while the girls were visiting Scott, who was living with the Grandparents. There was also testimony about how the girls would cry and say they did not want to go back to their mother at the end of periods of visitation. The Grandparents also complained that they felt that Debra neglected the girls and failed to supervise them as closely or carefully as the Grandparents thought proper and would do themselves. In this vein, there was a great deal of comparative evidence intended to show that the Grandparents would be better custodians than Debra. For instance, it was shown that Debra had lived in three different places since the divorce, that she was not a good housekeeper, that she did not work and had no reliable source of income, and that she sometimes allowed the girls to run around in nothing more than their underpants. In contrast, the Grandparents presented evidence to demonstrate the superior quality and stability of the environment they felt they could offer the girls. They had raised their own children to adulthood and had lived in the same lovely home for many years. The Grandparents were shown to be mature, and emotionally healthy persons. While the Grandfather had worked for the same employer for several years, the Grandmother was not employed, but maintained the home. Thus, the Grandparents were able to provide the girls with a stable, loving home life and had the ability to focus their attention on the girls and give them any material things they might need. Other witnesses testified that following the divorce, Debra had not worked, that she had received welfare benefits, that her grass was often unmowed, that she had been seen wearing a leather jacket, that she had been seen coming out of a bar on three occasions, and that she had lived with a man, Steve Bennett (Bennett), to whom she was not married. Bennett, it was shown, was baldheaded, rode a motorcycle, and usually wore jeans, a t-shirt, an earring, and motorcycle boots. It was also established that the girls had been seen on occasion riding their "big wheels" in the street along with several other neighborhood children.

Upon this evidence, the trial court entered the following decree:

"Comes now the Court after having taken this matter under advisement on the paternal grandparents' intervenors' Motion for Change of Custody and finds

that after hearing the evidence, reviewing the facts and examining the Proposed Findings of Fact and Conclusions of Law of the Intervenors' and respondents' Final argument that there has been a change of circumstances so substantial and continuing as to make the existing custody order unreasonable. The Court further finds from the evidence as established in the intervenors' Proposed Findings of Fact and Conclusions of Law that the present custodial parent is unfit and that she has had long periods of acquiescence, whereby she has relinquished voluntarily custody of the children. The Court finds that the intervenors are fit and proper people to maintain the custody of the children. Therefore, the Court grants the intervenors' Petition and Motion for Change of Custody and finds that the children of Scott Simmons and Debra Simmons be placed in the custody of the intervenors, Jerry Simmons and Darlene Simmons, forthwith. So Ordered This 30th day of January, 1985."

*Record* at 169.

## ISSUE

Debra's appeal raises one issue:
Did the trial court abuse its discretion by modifying its original custody decree to award custody of Debra's children to the paternal grandparents? [1]

## DECISION

PARTIES' CONTENTIONS—Debra maintains that before the trial court could award custody to the Grandparents they were required to prove that there had been a substantial and continuing change of circumstances since the prior decree *and* that Debra was an unfit parent or that she had voluntarily relinquished custody to the Grandparents. She opines this burden was not met.

The Grandparents reply that custody should be determined by using only the

best interest of the child standard and that, in any event, whether the evidence was sufficient to support the trial court's determination is a question of fact for the trial court, not one for this court on review.

CONCLUSION—The trial court abused its discretion by modifying its original custody decree to award custody of Debra's children to the paternal grandparents because the change of custody was not supported by the evidence and is contrary to law.

A decision to modify a prior custody decree, as do all child custody determinations, rests in the sound discretion of the trial court, *Barnett v. Barnett* (1983), Ind.App., 447 N.E.2d 1172, and such a decision will not be disturbed on appeal unless the trial court has abused its discretion. *Poret v. Martin* (1982), Ind., 434 N.E.2d 885. Thus, we are reluctant to reverse unless the trial court's determination is clearly erroneous and contrary to the logic and effect of the evidence before the court. *Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807.

■■■ Here, the Grandparents could obtain custody, if at all, only by obtaining a court ordered modification of the trial court's original custody decree, which had awarded custody to Debra in conjunction with her divorce from Scott. The focus in a modification hearing is significantly different than it is in an initial hearing to determine custody. This is because it has been recognized that a stable environment is in the child's best interest and that changes in custody disrupt the child's life and are not ordinarily conducive to the child's welfare. *See Brown v. Brown* (1984), Ind.App., 463 N.E.2d 310. Consequently, a trial court may modify one of its prior custody orders "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind.Code 31–1–11.5–22(d) (1982). A trial court's inquiry is strictly limited to a consideration of changes in circumstances that have oc-

---

1. Because we reverse, we need not address a second issued raised by Debra concerning the admission of certain evidence at trial.

curred *since* its last custody decree. Indeed, IC 31–1–11.5–22(d) goes on to direct: "the court *shall not* hear evidence on matters occurring prior to the last custody proceeding between the parties unless such matters relate to a change of circumstances." (Emphasis supplied). Accordingly, on appeal, this court will disregard all evidence of events or circumstances occurring prior to the last custody order unless it demonstrates a change in circumstances. *See Brown, supra.* Thus, a party seeking a modification of custody may not simply relitigate the circumstances that existed prior to or at the time of an existing decree. *Id.* Rather, the party seeking a modification bears the heavy burden of demonstrating that a *substantial* change in circumstances occurred since the existing decree and that these changes were of such a decisive nature that they necessitated a change in custody. *Poret, supra.*

■ In part, the same philosophy underlies the common law rule that, in a custody dispute between a child's natural parent and a third party, it is presumed that it is in the best interest of the child to remain in the custody of the parent. *Hendrickson v. Binkley* (1974), 161 Ind.App. 388, 316 N.E.2d 376, *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98. But in addition, this presumption serves to protect the parent's right to be free from unwarranted interference by third parties into the parent's fundamental relationship with the child. Consequently, the law imposes a second and even more strenuous burden of proof on a third party who seeks to replace a natural parent as the child's legal custodian. This burden has been described to require a showing, by clear and cogent evidence, that the parent is unfit or has acquiesced in or voluntarily relinquished custody to the third party for such a long period of time that "the affections of the child and the third party have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Id.* at 394, 316 N.E.2d at 380. It is only after such a showing that a court may proceed to the question of whether the child's best interest will be better served by placing the child in the custody of the third party as compared to the parent. *Id.*

■ Our review of the record discloses that the Grandparents entirely failed to meet either burden of proof. Despite the court's findings to the contrary, there was no showing of any negative, substantial change in circumstances *since* the prior decree that would necessitate a change in custody. Indeed, the *only changes* reflected in the record were positive and favored maintaining custody in Debra. In fact, it appears from the record that the Grandparents made little or no attempt during the hearing to demonstrate a substantial change in circumstances; nor do they argue on appeal that the evidence would support such a finding. Instead, it seems to be their position that such a showing was not required and that the court could award them custody merely upon a showing that the girls' best interests would be served by doing so because the Grandparents would be better custodians than Debra. To this end, the Grandparents presented evidence that, in their opinion, showed that Debra was a less than adequate parent. For example, the evidence concerning the circumstances *prior* to the divorce showed that Debra had lived in two different residences, that she was a poor housekeeper, and that she allegedly neglected her children by allowing them to play in the house while she napped. The evidence concerning the circumstances *after* the divorce showed that Debra had lived in three different residences, that she was unemployed and had received welfare benefits, that her grass was often unmowed, and that she had been seen coming out of a bar on three separate occasions. There was, however, no showing that any act of alleged neglect had occurred since the divorce. In any event, this evidence had no tendency to demonstrate a substantial change in circumstances since the divorce. Consequently, the evidence concerning events and circumstances prior to the divorce has not been considered by us on

appeal and should not have been considered by the trial court.

If this evidence had any relevance at all, it was to show that Debra's circumstances had changed for the better since the divorce. To illustrate, the only change in circumstances shown to have occurred since the divorce was that Debra had begun living with Bennett. The Grandparents strongly opposed this arrangement and essentially rested their case on Debra's cohabitation. But, the record reveals that Debra and Bennett were married prior to the modification hearing. *Record* at 43. Even if they had not been married at the time of the hearing, their cohabitation was not, necessarily, enough to deprive Debra of the custody of her children. *Dunlap v. Dunlap* (1985), Ind.App., 475 N.E.2d 723. And yet, the record demonstrates that Bennett offered Debra and the girls a significant amount of stability and security. He had been continuously employed by General Motors for more than twenty-one years. *Record* at 203. His income was consistently around $40,000 per year, and he expected to earn $50,000 in 1985. *Id.* at 204–06. Bennett was supporting his new family with his earnings and had included the girls under the coverage of his employer's health insurance. *Id.* at 206–11. The family had settled into a new residence, and Bennett had opened savings accounts for the girls. *Id.* at 213. Finally, Bennett testified that he loved the girls very much, that they loved him, and that he very much wanted the girls to continue living with him and Debra. *Id.* at 218–19. These positive developments were the only changes in circumstances since the divorce that have support in the record. These changes did not, as a matter of law, render the prior custody decree unreasonable and, certainly, did not necessitate the trial court's decision to take the girls away from Debra. Consequently, the Grandparents failed, as a matter of law, to meet their burden of proving that a modification of custody was justified. So we are forced to conclude that the trial court abused its discretion in ordering the modification.

The trial court's conclusion that the Grandparents had shown, by clear and cogent evidence, that Debra was unfit and that she had voluntarily relinquished custody is equally erroneous. The record contains no evidence that Debra had ever acquiesced in or voluntarily relinquished custody of her children to the Grandparents or to anyone else. In fact, the Grandparents confirmed that Debra had always maintained custody of the girls, although the girls had visited with them from time to time. *Id.* at 165, 167, 177. Thus, we find no basis for the trial court's conclusion to the contrary.

■ Concerning Debra's fitness as a parent, the Grandparents were required to establish that Debra was unfit at the time of the hearing to have the care and custody of her children, not that she may have been so at some time in the past. *Hendrickson, supra; Sanders v. Sanders* (1974), 160 Ind. App. 174, 310 N.E.2d 905. Thus, the instances of alleged neglect or unfitness, such as Debra's poor housekeeping habits or her sleeping while the girls were awake and playing in the house, which occurred prior to the divorce and more than twelve months prior to the subject custody hearing had little, if any, bearing on Debra's fitness as a parent under the different circumstances in existence on the date of the hearing. *See Sanders, supra.* But, these instances, even if they had been of more recent origin, seem entirely inadequate justification for depriving a mother of the custody of her children. In any event, the record contains no evidence of anything occurring since the divorce that could reasonably be deemed to constitute neglect or unfitness on Debra's part. Rather, the evidence presented by the Grandparents showed nothing more than that Debra's lifestyle and care of her children failed to meet the standards desired by the Grandparents. At most, the evidence established that Debra was not as good a housekeeper or disciplinarian as the Grandmother and that she allowed the girls to do things the Grandparents would not. In short, by comparing their own lifestyle, standard of living, and rearing philosophy with Debra's,

they may have proven, on a relative basis, that it would be in the best interest of the girls to be placed in their custody. But, a best interest analysis based on such subjective and value laden comparisons is not a valid measure of a parent's fitness and, most surely, not a legitimate basis on which to deprive a parent of custody. As was stated in *Hendrickson, supra* 161 Ind. App. at 396, 316 N.E.2d at 381:

> "If the 'best interest rule' was the only standard needed without anything else, to deprive the natural parent of custody of his own children, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of the natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the 'best interest' of the child would be satisfied by being placed with the third party."

Hence, it is only when a natural parent's presumptive right to maintain custody has been overcome by clear and cogent evidence that a court may award custody to a third party over the parent's wishes. *Id.* Such an extreme measure requires concrete, objective evidence of unfitness, not the subjective, self-serving sort of comparative evidence offered by the Grandparents in this case.

There was no evidence that Debra's girls had ever been adversely affected by her care. Instead, and despite the Grandparents' allegations that Debra was a less than adequate parent, the girls were described as being healthy, intelligent, well-behaved children. *Record* at 179–80, 186–87. The objective evidence and the subjective complaints of the Grandparents did not demonstrate that Debra's care fell outside the range of acceptable, parental behavior; nor did they establish that Debra had ever failed to adequately perform her parental duties.

Again, the Grandparents place great emphasis on the fact that Debra lived with "a man, who was bald headed, rode a motorcycle, and wore an earring in his ear." *Appellee's Brief* at 5, 13. As indicated above, Bennett's lifestyle and living arrangement with Debra were not a sufficient reason to deprive her of the custody of her children in the absence of a showing that it had an adverse effect on the girls. *Dunlap, supra.* There was no such showing.

In sum, the Grandparents failed to present any clear and cogent evidence that Debra was unfit to have the continued care and custody of her children. As a result, the Grandparents failed, as a matter of law, to overcome Debra's presumptive right to retain custody. Accordingly, they would not have been entitled to obtain custody in this case even if they had not been required to also meet the statutory burden of proving a substantial change in circumstances since the existing custody decree. And yet, this *was* a proceeding to obtain a modification of an existing decree. In spite of this, the case appears to have been tried on the theory of the "best interest rule" without regard to the statutory requirement that a modification can be ordered "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." IC 31–1–11.5–22(d).

While we have extensively recited the evidence as it relates to the various aspects of a modification case, we have considered only the evidence and any reasonable inferences arising therefrom most favorable to the trial court's judgment. In doing so, we have concluded that the evidence presented failed, as a matter of law, to demonstrate that a change in custody was necessitated by a substantial and continuing change in circumstances. Consequently, the trial court's modification of custody was contrary to law and an abuse of discretion.

Reversed and remanded for further proceedings not inconsistent herewith.

SULLIVAN and SHIELDS, JJ., concur.