**NEHI BEVERAGE COMPANY, INC. OF INDIANAPOLIS, Appellant (Defendant Below),**

v.

**Robert L. SIMS, Appellee (Plaintiff Below).**

No. 2–585A142.

Court of Appeals of Indiana, Second District.

July 8, 1987.

---

Peter G. Tamulonis, Howard J. DeTrude, Jr., Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellant.

Grover B. Davis, McClure, McClure & Kammen, Indianapolis, for appellee.

SHIELDS, Presiding Judge.

Nehi Beverage Company, Inc. of Indianapolis (Nehi) appeals a judgment awarding compensatory and punitive damages against it and in favor of Robert L. Sims (Sims) while Sims appeals the trial court's grant of a motion for judgment on the evidence in favor of the president of Nehi, Marvin Farber.

## ISSUES

On appeal Nehi challenges the jury verdict of $8,500 in compensatory damages as being unsupported by the evidence, contrary to law, contrary to the evidence, and excessive. Nehi challenges the $75,000 verdict for punitive damages as being contrary to law, contrary to the evidence and unsupported by the evidence.

Sims challenges the trial court's grant of Farber's motion for judgment on the evidence at the conclusion of all the evidence.

## FACTS

The evidence viewed most favorably to the verdict and ensuing judgment discloses Sims began work for Nehi in November of 1981 as a route supervisor. As a part of his employment benefits, he elected to participate in a group medical insurance plan underwritten by Fireman's Fund Insurance. Pursuant to the provisions of the plan, Sims signed an enrollment card which authorized Nehi to deduct the insurance premiums from his salary. The enrollment card identified Fireman's Fund as the insurance company and contained a policy number. Nehi deducted the premium from Sims's weekly pay from February 9, 1982 through March 26, 1983.

On September 1, 1982, Fireman's Fund terminated the group insurance policy. Nehi, however, continued to deduct the same weekly amount it had previously deducted from Sims's pay for the insurance premium. It did not notify Sims or any other covered employee of the termination. On October 5, 1982, Sims experienced what he thought were symptoms of a heart attack. He was examined at Westview Osteopathic Hospital and then released. Increased pain prompted Sims to return to Westview the following morning. This time Sims was admitted and remained in the hospital for three days. After being discharged, he returned for an additional test. On all occasions Sims presented his Fireman's Fund insurance card as a basis for payment.

On October 15, Sims's doctor informed him he had gallstones and recommended immediate surgery which he scheduled for November 11. Sims returned to work on October 18. A few days later his surgeon informed Sims the Fireman's Fund insurance policy had been cancelled. He further informed Sims his outstanding medical bills at Westview would need to be paid before the surgery could be performed. In response, Sims went to Farber. Farber confirmed the absence of company group medical insurance, requested confirmation Sims's surgery was necessary, and directed Sims to bring him, Farber, Sims's medical bills so he could "check them out." Farber indicated the company would pay those bills he thought were reasonable. A few days later Sims had another meeting with Farber. In the interval, Farber received a letter from Sims's surgeon and a phone call from the surgeon's secretary confirming Sims's need for surgery. At the meeting Farber insinuated Sims was romantically involved with the surgeon's secretary and demanded a second opinion verifying the surgery was necessary. Sims again inquired about the payment of the Westview bills and told Farber his pain was increasing, to which Farber responded, "pain never killed anybody" (Record at 348). At yet another meeting, at which Farber advised "he wasn't going to pay the bills" (Record at 348), Sims agreed to an examination by any doctor Farber selected and suggested Farber make the appointment.

Over the next weeks Sims repeatedly checked with Farber regarding an appointment with a Farber-selected doctor which Farber never made. Eventually, after the November 11 surgery date passed, Sims obtained a second opinion confirming the need for surgery. In the course of these meetings Farber advised Sims he thought Sims's Westview bills were exorbitant and

he and his lawyer would decide how much they had to pay. Sims's weekly inquiry about payment of the bills met with the response they were being "checked out." However, neither Farber nor anyone else on Nehi's behalf contacted the hospital nor made other inquiry about the reasonableness of the bills.

Sims cancelled the surgery scheduled November 11 at Westview because he did not have the money to satisfy his previous hospital bills or to pay for the surgery. Upon inquiry, Farber told Sims he was attempting to obtain new insurance coverage which the company would probably have by December or January and then Sims would have to wait thirty days before he could have the surgery. In fact, Nehi obtained insurance at the end of November and Sims had surgery on January 24, 1983. Nehi's insurance carrier paid the hospital bills.

After a period of recuperation from surgery, Sims returned to work on March 28, 1983, but was discharged by Nehi after only two hours. At that time, Farber advised Sims Nehi was not going to pay the Westview medical bills because Sims was no longer an employee. Sims filed suit against both Nehi and Marvin Farber, alleging breach of contract, fraud, and conversion.

## DISCUSSION

### I. Compensatory Damages

#### A. *Sufficiency of the Evidence*

▮ Nehi argues the evidence is insufficient to sustain a verdict of compensatory damages on the theories of fraud and conversion but does not challenge the sufficiency of the evidence on the breach of contract claim. When a jury is instructed on two or more possible theories of recovery, we will sustain the judgment on any theory supported by the evidence. *Ohio*

*Finance v. Berry* (1941), 219 Ind. 94, 37 N.E.2d 2; *Montgomery Ward & Co. Inc. v. Tackett* (1975), 163 Ind.App. 211, 323 N.E.2d 242; *Clarke Auto Co. v. Reynolds* (1949), 119 Ind.App. 586, 88 N.E.2d 775. Accordingly, we affirm the liability aspect of the judgment for Sims without considering Nehi's asserted errors on the fraud and conversion claims.

▮ Nevertheless, we further note the record reveals evidence from which the jury could have found fraud. To establish fraud Sims had the burden of proving Nehi made a misrepresentation of a past or existing material fact, with knowledge or reckless ignorance of its falsity, upon which Sims relied to his detriment. *First National Bank of New Castle v. Acra* (1984), Ind.App., 462 N.E.2d 1345. Nehi argues the evidence fails to establish both a material misrepresentation of a past or existing fact and reliance by Sims to his detriment. We disagree. Sims's Fireman's Fund group insurance policy was cancelled effective September 1, 1982. Nevertheless, neither Farber nor any other Nehi employee informed Sims his medical insurance had been cancelled until after he incurred the Westview Hospital medical expenses. In fact, Nehi continued to deduct the same weekly amount from Sims's pay, thereby making a present representation on the pay check the deduction was for Fireman's Fund coverage. In reliance upon these representations he had insurance, Sims incurred medical bills at Westview which Nehi never paid. This evidence supports a finding of fraud.[1] There is no error in the jury's award of compensatory damages.

#### B. *Excessive Damages*

▮ Nehi next asserts the amount of compensatory damages awarded on the breach of contract and conversion counts is

---

1. There is also evidence to support a finding of conversion. In an action for conversion the plaintiff must show an immediate, unqualified right to the possession of property over which the defendant exercised control. *French v. Hickman Moving and Storage* (1980), Ind.App., 400 N.E.2d 1384. Sims had an unqualified right to his pay. He only authorized deductions from his paycheck for the Fireman's Fund insurance policy. Nevertheless, Nehi continued to deduct the premium amount from Sims's weekly check after the Fireman's Fund policy was cancelled. On these facts the jury could reasonably have concluded Nehi converted the monies deducted from Sims's paychecks.

excessive and unsupported by the evidence. However, we do not reach this issue. As noted above, when a jury is instructed on two or more possible theories of recovery, we will sustain the judgment on any theory supported by the evidence. *Ohio Finance v. Berry.* Because there is evidence from which the jury could have found fraud, by not attacking the verdict as being excessive on the fraud claim, Nehi has implicitly conceded the correctness of the judgment on that claim insofar as the amount of damages is concerned. *Montgomery Ward & Co. Inc. v. Tackett; Clarke Auto Co. v. Reynolds.*[2]

## II. Punitive Damages

Nehi next challenges the jury's verdict awarding punitive damages. At trial Sims had the burden to prove, by clear and convincing evidence, Nehi's conduct demonstrated elements of malice, fraud, willfulness or wantoness, gross negligence, or oppression. *Orkin Exterminating Co. v. Traina* (1986), Ind., 486 N.E.2d 1019; *Travelers Indemnity v. Armstrong* (1982), Ind., 442 N.E.2d 349. However, regardless of the quantum of Sims's burden of proof at trial, our appellate standard of review is the same. *Orkin,* 486 N.E.2d at 1022; *Bank of New York et al v. Bright* (1986), Ind.App., 494 N.E.2d 970; *Gash v. Kohm* (1985), Ind.App., 476 N.E.2d 910. We neither reweigh the evidence nor judge the credibility of witnesses. We consider only the evidence most favorable to the judgment and all reasonable inferences therefrom. If there is substantial evidence of probative value supporting the claim we will not disturb the judgment.

■ The evidence presented in this case supports the jury's verdict. Nehi's president, Marvin Farber, knew the company's group medical insurance policy expired in September, 1982, and yet Nehi continued to deduct premium amounts from Sims's weekly paycheck, thus falsely representing he had insurance. When Sims sought payment of medical expenses he incurred after the insurance policy expired, Nehi promised to investigate the bills and pay them, if reasonable. However, Nehi failed to do so, choosing instead to engage in stall tactics to delay Sim's surgery until the company once again had group insurance to cover the claim. Further, Nehi failed to pay any portion of the medical expenses Sims incurred as a result of being uninsured. This evidence supports the jury's verdict.

## III. Judgment on the Evidence

■ Sims argues the trial court erred in granting Farber's motion for judgment on the evidence at the conclusion of all the evidence. However, this asserted error is not preserved for our consideration.

Indiana Rule of Trial Procedure 59(C) and Indiana Rule of Appellate Procedure 2(A) require the filing of a motion to correct error within sixty (60) days of the entry of the final judgment or appealable final order as a condition precedent to an appeal. However, Subsection (G) of T.R. 59 provides an exception to that predicate. It provides:

"If a motion to correct error is denied, the party who prevailed on that motion may, in his appellate brief and without having filed a statement in opposition to the motion to correct error in the trial court, defend against the motion to correct error on any ground and may first assert grounds entitling him to relief in the event the appellate court concludes that the trial court erred in denying the motion to correct error...."

T.R. 59(G).

According to the explicit language of subsection (G), a party may, without having

---

2. In addition, a perusal of the instructions given to the jury reveals the jury was uninstructed on the measure of damages on either the breach of contract claim or the fraud claim. If there is evidence supporting the jury's verdict, the damage award will stand because the jury's exercise of discretion as to the appropriate amount of compensatory damages was unrestricted other than by the admonition damages for mental anguish or emotional stress were not allowable unless accompanied by a physical injury. Here, there is evidence of Sims's unpaid hospital bill, the pain and suffering he endured while awaiting his delayed surgery, and the interest charges he incurred in borrowing money to pay the Westview bill. This evidence would support the jury's discretion in awarding the $8,500. We assume, of course, the jury followed the instruction which proscribed damages for mental anguish and emotional suffering.

first filed a motion to correct error, raise grounds for relief but only "in the event the appellate court concludes that the trial court erred in denying the motion to correct error." Accordingly, Sims's efforts to assert error against Farber without first having filed a motion to correct error,[3] fails inasmuch as the trial court did not err in denying Nehi's motion to correct error.

Judgment affirmed.

ROBERTSON, J., concurs.

BUCHANAN, J., concurs in result.

**3.** The only motion to correct error filed in the trial court was the motion filed by Nehi on February 8, 1985. Sims's statement in opposition to the motion was filed on March 12, 1985, more than sixty (60) days after the judgment. Therefore, it cannot be considered as Sims's motion to correct error.