**Gary Eugene SEBASTIAN, Appellant (Respondent),**

v.

**Kim Sue SEBASTIAN, Appellee (Petitioner).**

No. 27A02–8702–CV–00085.

Court of Appeals of Indiana, Second District.

June 9, 1988.

Bruce A. MacTavish, Guerrero, Guerrero & Guerrero, Marion, for appellant.

Kenneth D. Kauffman, Beaman & Kauffman, Marion, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-respondent Gary Eugene Sebastian (Gary) appeals from the trial court's decision awarding custody of his daughter (Kara) to appellee-petitioner Kim Sue Sebastian (Kim), alleging the trial court abused its discretion awarding custody of Kara to Kim, in determining Gary's support obligation, and in making a contingent award of custody.

We affirm in part and reverse in part.

## FACTS

Kim and Gary were married July 23, 1983, at Lowery Air Force Base in Colorado, where both of them were stationed while serving in the air force. Thereafter they both were stationed in Okinawa, Japan, where Kara was born on May 15, 1984.

When Kara was born, Kim took maternity leave, and Gary took time off to be with Kara. Gary also transferred to weekend duty so that he could spend more time with Kara, and Kim frequently came home from work over the noon hour to take care of her.

Various disputes arose during the marriage. Gary wanted Kim to spend more time with Kara, and wished that Kim would leave the air force in order to stay at home with Kara. Gary was not happy with Kim's participation in a bowling league, and did not approve of Kim's behavior at formal dinners they attended. Gary accused Kim of having affairs with co-workers, and of drinking excessively. Kim, on the other hand, objected to Gary's desire to live like "hermits." *Record* at 110.

Kim and Gary separated in December, 1985. In March of 1986, Kim returned to Marion, Indiana, her home town, and filed for divorce. At that time, the trial court entered a Temporary Restraining Order against Gary and gave temporary joint custody of Kara to Kim and her parents (the Sloderbecks). Kim then left Kara with the Sloderbecks, and returned to Japan to find housing for herself and Kara. While the divorce was pending, Kim reenlisted in the air force, extending her enlistment an additional six years.

In April of 1986, the trial court issued a provisional order reaffirming that Kim and the Sloderbecks had temporary joint custody of Kara, and also added that Gary should pay $300 per month for temporary child support. After a hearing in May of 1986, the trial court modified the provisional orders by vacating the support order but continuing temporary joint custody in Kim and the Sloderbecks, and allowing Gary visitation with Kara at his parents' home in Ohio for a ten-day period. Gary exercised his right of visitation and took Kara to his parents' home, where he was also living, for a visit.

In June of 1986, Kim returned to Indiana and then took Kara back to Japan with her.

Gary obtained a discharge from the air force on July 6, 1986, six months early, so

that he could provide a home in the United States for Kara. He obtained a job in Ohio as an assembler/welder at a water refining company, receiving approximately $7.00 an hour for a 40–hour work week. Kim remained in the air force, earning approximately $1,100 per month plus medical benefits for herself and Kara.

At hearings on September 2 and 3 of 1986, various accusations were made that Kim had become hysterical and violent on one occasion, that Gary had physically abused Kim, and that Gary had molested Kara when she visited him in Ohio. After finding that the parties' accusations against each other were unsupportable, that the "parties are immature and have not been able to accept the fact that their marriage is irretrievably broken down," *record* at 33–34, and that both parties nonetheless loved their daughter and would make good parents, the trial court entered a divorce decree and awarded custody of Kara to Kim. However, the trial court attached the following condition:

"While the Court has no particular objection to the parties' child being raised for a short, temporary period of time in Japan, the Court is not pleased with the prospect that such an arrangement will continue indefinitely or, perhaps, become permanent. [Kim] indicated in her testimony that she thought her tour of duty would end in November of this year but also stated that she thought it was possible it could be extended indefinitely. Such an occurrence would effectively cut off [Gary's] relationship with the child and make it nearly impossible for him to see her, except on a very infrequent basis. Accordingly, the Court orders that [Kim's] custody of Kara be conditioned

upon her return to the United States in November of this year. In the event, however, that her tour is extended beyond November of this year, the Court directs that while [Kim] shall continue to have custody of Kara, actual physical custody shall be placed with [Kim's] parents, Mr. and Mrs. Sloderbeck of Marion, Indiana, until such time as [Kim] is restationed in the United States."

*Record* at 34. On September 10, 1986, the trial court entered a nunc pro tunc entry, requiring Gary to pay $25 per week in child support.

## ISSUES

Four issues are raised by Gary, which we restate as the following three:

1. Did the trial court abuse its discretion in awarding custody of Kara to Kim?

2. Did the trial court abuse its discretion in ordering Gary to pay $25 per week of child support for Kara?

3. Did the trial court err in awarding the Sloderbecks physical custody of Kara in the event that Kim did not return to the United States within a specified time? [1]

## DECISION

ISSUE ONE—Did the trial court abuse its discretion in awarding custody of Kara to Kim?

PARTIES' CONTENTIONS—Gary argues that the trial court abused its discretion in awarding custody to Kim because he had shared equally in caring for Kara, because Kim had become violent on one occasion,

1. We point out that Kim also raised this issue for the first time in her appellee's brief. Under Ind. Rules of Procedure, Trial Rule 59(G), the party who prevails on the denial of a motion to correct error may assert for the first time on appeal any grounds entitling him to relief in the event that the appellate court concludes the trial court erred in denying the motion to correct error without filing a motion to correct error or a statement in opposition to a motion to correct error. *See May v. Blinzinger* (1984), Ind.App., 460 N.E.2d 546, *trans. denied.* However, in *Nehi Beverage Co. v. Sims* (1987), Ind.App., 509 N.E.2d 1125, we concluded that the above rule applies only in the event that the appellate court concludes the trial court erred in denying the motion to correct error. In *Nehi,* the appellee could not assert error for the first time on appeal because the trial court did not err in denying the motion to correct error. Here, as we conclude that the trial court erred in part in denying Gary's motion to correct error, and because Kim raises the identical issue, we will proceed to address the issue as raised by both Gary and Kim.

and because Japan had unsuitable living conditions.

Kim responds that there was sufficient evidence adduced at trial to support the trial court's decision.

CONCLUSION—The award of custody to Kim was not clearly against the logic and effect of the facts and circumstances before the trial court.

In custody disputes, the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters. Guiding the trial court in custody determinations is an Indiana statute. *See* Ind. Code 31–1–11.5–21 (Supp.1987). The trial court must consider the factors listed in IC 31–1–11.5–21 along with other relevant factors, but is not required to make a specific finding on each of the listed factors. *Hoyle v. Hoyle* (1985), Ind.App., 473 N.E.2d 653. As the trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony, its decision receives considerable deference in an appellate court. *Fox v. Fox* (1984), Ind. App., 466 N.E.2d 789, *trans. denied; D.H. v. J.H.* (1981), Ind.App., 418 N.E.2d 286. Thus, we will reverse the trial court's custody determination only if it is clearly against the logic and effect of facts and circumstances before it so that an abuse of discretion has occurred. *Hoyle, supra.*

■ Gary's argument is merely a request for us to reweigh the evidence, which we cannot do. *D.H., supra.* The evidence before the trial court indicated both parents sought custody of Kara, and that each has an adequate income and the ability to support her. Both Kim and Gary shared the responsibility of caring for Kara in the past. Kara enjoyed good relationships with both Kim's and Gary's parents. The testimony further showed that it was common for a single woman with children to be in the air force. *Record* at 81. Kim found adequate housing on the base for herself and Kara. Kara would spend half a day with a babysitter and half a day at a Christian day care center while Kim worked. *Record* at 82.

At the hearing, Gary and Kim attempted to discredit the other in the eyes of the trial court by making various allegations of misconduct, but the trial court found no evidence to support the allegations and labeled them as "spurious." *Record* at 33. Although determining that both of the parties were good parents, the trial court made a difficult decision, and based on its observations, determined that the best interests of Kara would be for Kim to retain custody. There was evidence at trial to support the trial court's decision; we see no abuse of discretion. *See Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071; *In Re Marriage of Myers* (1979), 180 Ind.App. 284, 387 N.E.2d 1360.

ISSUE TWO—Did the trial court abuse its discretion in ordering Gary to pay $25 per week of child support for Kara?

PARTIES' CONTENTIONS—Gary challenges that there was no evidence produced at trial on the issue of support on which the trial court could support its nunc pro tunc order.

Kim replies that the testimony regarding Kim's and Gary's employment and earnings was sufficient to support the order.

CONCLUSION—The trial court did not err in entering a support order, requiring Gary to pay $25 per week in child support.

Again, we will not reverse the trial court's decision absent a showing of an abuse of discretion. *Olson v. Olson* (1983), Ind.App., 445 N.E.2d 1386. Custody, support and visitation are always issues before the trial court in a dissolution proceeding when a child of the parties exists. *Dorsey v. Dorsey* (1980), Ind.App., 409 N.E.2d 1233.

■ IC 31–1–11.5–12 sets forth factors which the trial court should consider in awarding child support. The trial court is not required to elaborate on how it balances the factors considered. *In Re Marriage of Rupp* (1983), Ind.App., 449 N.E.2d 1164. In this case, there was sufficient evidence before the trial court to shed light on the relevant factors, and to support its award. The trial court was informed of the livelihoods of both Gary and Kim, and knew that Kim earned $1,100 per month, and Gary earned approximately $280 per

week. Gary's salary would also increase in September of 1986. Substantial evidence was also presented regarding the personal possessions of Kim and Gary. *Record* at 84–87, 107, 219–223. The trial court was aware that Kim needed a babysitter to care for Kara, and that various medical expenses occurred from time to time. Sufficient evidence was offered from which the trial court could glean Kim's situation in Japan and the lifestyle Kara would have had if the marriage had not been dissolved. If there was any evidence of hardship or inability to pay on the part of Gary, he should have offered this evidence at the hearing. *See Allen v. Allen* (1985), Ind. App., 477 N.E.2d 104; *Bill v. Bill* (1972), 155 Ind.App. 65, 290 N.E.2d 749. The trial court had before it sufficient evidence of the parties' incomes, standards of living, and needs in order to support its order. *See Chrisman v. Chrisman* (1973), 156 Ind.App. 388, 296 N.E.2d 904.

ISSUE THREE—Did the trial court err in awarding the Sloderbecks physical custody of Kara in the event that Kim did not return to the United States within a specified time?

PARTIES' CONTENTIONS—The trial court should not have awarded custody to the Sloderbecks, Gary contends, because there was no evidence or finding by the trial court that Gary or Kim were unfit parents. Gary adds that IC 31–1–11.5–22 does not provide for contingent awards.

Kim also attributes error to the conditional portion of the award, arguing that she should be awarded permanent and unconditional custody of Kara. She interprets the trial court's award as an attempt to coerce her into returning to the United States despite her right to engage in the profession and lifestyle she chooses.

CONCLUSION—The trial court did not abuse its discretion in awarding custody of Kara to Kim in Japan as long as Kim returned to the United States by November of 1986. We must conclude, however, that from the record before us the trial court did err in awarding physical custody of Kara to the Sloderbecks in the event that Kim did not return by the specified date.

■ While there are no reported Indiana cases awarding custody to a parent who resides in a foreign country, custody is often awarded to a parent who resides in or moves to another state if it is in the best interests of the child to do so. *See Lubeznik v. Liddy* (1985), Ind.App., 477 N.E.2d 947, *trans. denied; Crowe v. Crowe* (1946), 116 Ind.App. 534, 65 N.E.2d 645; *see also McRight v. McRight* (1984), Ala.Civ.App., 444 So.2d 869; *Harrison v. Harrison* (1969), 170 Colo. 397, 462 P.2d 119; *Brown v. Goodloe* (1960), 215 Ga. 755, 113 S.E.2d 393; *Schmidt v. Schmidt* (1952), 346 Ill. App. 436, 105 N.E.2d 117; *Richard v. Hayes* (1959), Mo.App., 320 S.W.2d 65; *I_____ v. B_____* (1957), Mo.App., 305 S.W.2d 713. *See generally* Annot., 15 *A.L. R.2d* 432 (1951 & Supp.1987).

There is approval for the concept that custody of a child may be given to a parent moving to or living in a foreign country:

"Certainly where the evidence shows that the child's interests would best be served by being in the custody of the parent who intends to move, that intention should not prevent the court from giving custody to that parent, even if visitation is thereby made more difficult. The denial of custody solely on the ground of residence is also improper where the move is being made in good faith and out of a desire to improve the material or psychological life of the custodian, so long as the child's interests are not prejudiced thereby."

*H. Clark, The Law of Domestic Relations In The United States* § 20.4, at 515–16 (2d ed. 1987); *see also Clark v. Clark* (1970), 46 Ala.App. 432, 243 So.2d 517; *Beck v. Bates* (1965), 239 Ark. 528, 390 S.W.2d 103; *Presutti v. Presutti* (1980), 181 Conn. 622, 436 A.2d 299; *In Re Erich* (1973), Del.Ch., 310 A.2d 910. *See generally* Annots., 20 *A.L.R.4th* 677 (1983) and 30 *A.L.R.4th* 548 (1984) (general discussion of propriety of awarding custody to a parent intending to reside in a foreign country and the propriety of court-authorized permission to remove a child to a foreign country).

■ It is true that the trial court is given wide discretion in fashioning decrees in dis-

solution proceedings, and may appropriately choose to place conditions in a custody decree if the conditions serve the best interests of the child. *See Marshall v. Reeves* (1974), 262 Ind. 107, 311 N.E.2d 807 (court may impose terms and conditions as needed to effectuate provisions of decree); *Clark v. Atkins* (1986), Ind.App., 489 N.E. 2d 90, *trans. denied* (trial court could award custody of the children to mother in Oklahoma but condition custody on her return to Indiana with her children when she graduated from school); *see also Ziegler v. Ziegler* (1984), 107 Idaho 527, 691 P.2d 773 (trial court could properly give custody of child to wife subject to limitation that she not remove child from the United States and not take the child to reside anywhere beyond a one hundred mile radius of the city without court order); *Carlson v. Carlson* (1983), 8 Kan.App.2d 564, 661 P.2d 833 (trial court could place a restriction on wife's custody of children that she remain in McPherson County, Kansas). *See generally H. Clark, supra* (original award of custody can be made on the condition that a custodian not leave a state or region).

So in this case we conclude that it was not beyond the trial court's discretion to condition Kim's physical custody of Kara by in effect requiring her to return to the United States by November of 1986 in order to retain physical custody. The trial court specifically mentioned its concern that if Kim decided to stay indefinitely in Japan with Kara, Gary's relationship with Kara would be severed, and it would be nearly impossible for him to see her. In *Partridge v. Partridge* (1971), 257 Ind. 81, 272 N.E.2d 448, our supreme court emphasized the importance of a noncustodial parent's right to visitation:

> "There can be no question but what visitation is a right which should be enjoyed by the parent who does not have the legal custody of the child, and ... he should be afforded such visitation within all reasonable application of the law so long as this can be accomplished in keeping with the best interests and the welfare of the child."

*Id.* at 84–85, 272 N.E.2d at 450; *see also* IC 31–1–11.5–24. Although Kim stated that she would be returning to the United States in November, the trial court properly considered that it was also possible that she would re-enlist for additional years and stay in Japan indefinitely. *See In Re Marriage of Davis* (1982), Ind.App., 441 N.E.2d 719 (trial court could consider possible out-of-state move by custodial parent in determining best interests of the children); *see also* Annot., 20 *A.L.R.4th supra*, at § 4.

As the evidence showed that Gary had a good relationship with Kara, the trial court was justified in placing the restriction on Kim's physical custody of Kara as it would be in Kara's best interest to maintain a relationship with Gary. Gary had also indicated, by taking time off when Kara was born and by requesting early discharge from the service in order to provide a home in the United States for Kara, that he was interested in maintaining his relationship with Kara.

Reluctantly, however, we cannot conclude that the trial court was within its discretion in awarding physical custody of Kara to Kim's parents in the event that Kim did not return to the United States by November of 1986.

▬▬ Cases considering custody disputes between parents and a third party guide us here. In Indiana, it is presumed that the best interest of a child is to be placed in the custody of a natural parent. *In Re Custody of McGuire* (1985), Ind. App., 487 N.E.2d 457; *In Re Marriage of Simmons* (1985), Ind.App., 487 N.E.2d 450, *trans. denied.* In order for a non-parent to obtain custody over the rights of a natural parent it must be shown, by clear and cogent evidence, that the natural parent is unfit or has acquiesced in or voluntarily relinquished custody to the third party. *McGuire, supra; Simmons, supra; Kissinger v. Shoemaker* (1981), Ind.App., 425 N.E.2d 208.

The rationale behind this strict standard is understandable:

> "[I]n custody cases, especially as here where a certain permanency of custody is involved, the court cannot determine that it is in the best interests of the child

to be placed within the custody of a third party, as against the presumption favoring the natural parent, unless the trial court has first determined from clear and cogent evidence that there is either unfitness of the appellant, long acquiescence, or voluntary relinquishment. If the 'best interest rule' was the only standard needed without anything else, to deprive the natural parent of custody of his own child, then what is to keep the government or third parties from passing judgment with little, if any, care for the rights of natural parents. In other words, a child might be taken away from the natural parent and given to a third party simply by showing that a third party could provide the better things in life for the child and therefore the 'best interest' of the child would be satisfied by being placed with a third party."

*Hendrickson v. Binkley* (1974), 161 Ind. App. 388, 395–96, 316 N.E.2d 376, 381, *cert. denied* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 98. The importance of a natural parent's right to custody of his or her children has frequently been emphasized, for example:

"Courts have not hesitated to build a 'strong fortress' around the rights of natural parents to their children; for this fortress to be vulnerable to encroachment, the one seeking to sever the parent-child relationship should not only present a preponderance of proof but such proof should be established 'by clear and indubitable evidence.'"

*In Re Adoption of Bryant* (1963), 134 Ind. App. 480, 492–93, 189 N.E.2d 593, 600 (citations omitted).

Although the Sloderbecks had previously cared for Kara and were willing and able to provide a good home for her, there was no showing in the record that Gary was an unfit parent. By court order the Sloderbecks had obtained temporary joint custody of Kara during the pending divorce proceedings, but there is no indication in the record that Gary acquiesced in or voluntarily relinquished custody of Kara to them for such a long period of time that "the affections of the child and third party [had] become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Hendrickson, supra,* 161 Ind.App. at 394, 316 N.E.2d at 380.

On the contrary, the evidence is that Gary desired custody of Kara, could provide a good home for her, and was financially able to support her. The trial court specifically found that both parents loved Kara and each would make a good parent. *Record* at 34. Although various accusations were made at trial as to possible indiscretions on Gary's part, the trial court found no evidence to support the statements as anything more than allegations. In light of these findings, and no finding that Gary was an unfit parent, we must conclude that the trial court should not have awarded physical custody of Kara to the Sloderbecks if Kim did not return to the United States by November, 1986.

The cases cited above have established an outer limit beyond which a trial court may not go in depriving a natural parent of custody. For whatever reason, that limit was exceeded in this case, thereby forcing us to hold that this part of the decree should be reversed. Gary was not shown to be unfit nor did he acquiesce in or voluntarily relinquish custody of Kara. *See McGuire, supra; Simmons, supra; Hendrickson, supra.*

The trial court's judgment is affirmed as to the award of custody to Kim and the support order, but is reversed as to the part which gives physical custody of Kara to the Sloderbecks in the event that Kim did not return to the United States by November of 1986.

Affirmed in part, reversed in part and remanded for further proceedings consistent herewith. Costs assessed one half each to Gary and Kim.

SULLIVAN and NEAL, JJ., concur.