Kathy M. SPEAKER, Appellant–Petitioner,

v.

John J. SPEAKER, Appellee–Respondent.

No. 53A04–0105–CV–188.

Court of Appeals of Indiana.

Dec. 27, 2001.

Michael R. Jeffries, Hinkle & Gibbs, Danville, Indiana, Attorney for Appellant.

Meredith L. McIntyre, McIntyre & Smith, Bedford, Indiana, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

Kathy Speaker (Mother) appeals the trial court's award of physical custody to John Speaker (Father) of their daughter S.S. She presents four issues for review, which we consolidate and restate as:

1) Did the trial court err by excluding the transcript of its in camera interview with S.S. from the record?

2) Did the trial court abuse its discretion when awarding physical custody to Father?

We affirm and remand.

The facts most favorable to the judgment reveal that the parties were married on February 27, 1988, and one child, S.S., was born to the marriage on September 14, 1991. Mother filed for dissolution, and the trial court assumed jurisdiction on May 23, 2000. During the pendency of this action, Mother and Father both resided in the marital residence in Bloomington, Indiana and shared custody of S.S. Following a final hearing, the trial court entered its decree of dissolution on April 9, 2001. With regard to custody of S.S., the trial court made the following findings sua sponte:

The central issues presented at the final hearing related to (a) custody of their nine year old daughter, [S.S.],....

Indiana Code 31–17–2–8 provides, in pertinent part, as follows:

"The court shall determine custody and enter a custody order in accordance with the best interests of the child. In determining the best interests of the child, there is no presumption favoring either parent. The court shall consider all relevant factors, including the following:

(1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

(A) the child's parent or parents; ...

(C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

(A) home;

(B) school; and

(C) community; [sic]

(6) The mental and physical health of all individuals involved...."

The Court has considered each of these factors, as well as others presented by the evidence admitted at trial. In addition to the evidence presented by the parties, the Court conducted a recorded "in chambers" interview with [S.S.] in the presence of the Court's reporter.

[S.S.] loves each of her parents and closely [sic] attached to each of them. Both [Mother] and [Father] testified that [S.S.] was very upset at [Father's] departure from the family home during a prior separation of the parties in 1997. The parties agreed that [Father] should move back into the home and that they should attempt to reconcile their differences because of the emotional impact that the separation had on [S.S.]. While [S.S.] is now older and has had nearly a year to prepare herself, her parents agree that she will be "devastated" by their permanent separation because of her love for, and close attachment to, each of them.

There are no other family members or family friends to whom [S.S.] is so close-

ly attached as to have a material bearing on the determination of custody.[1]

The evidence disclosed that [Mother] was diagnosed with depression about three years ago and anxiety or hypoglycemia about one year ago. She takes prescribed medication for those conditions and it appears that her sleep patterns may be affected somewhat either by the diagnosed conditions or her medications. The only evidence reflecting on [Mother's] ability to care [for S.S.] which might be related was that [S.S.] arrived at school late on five occasions during the Fall 2000 semester.

However, the Court agrees with [Father's] candid assessment that any concern about her diagnosed conditions or the impact of the medications on her ability to care for [S.S.] is "mild, at most." [Father] has also been engaged in counseling as a result of the stress related to the divorce proceedings. The Court concludes that the mental and physical health of the parties is not a significant factor in the determination of custody.

While each of the parties supported his or her custodial request with muted grumbling about the other, each agreed that the other was a good and loving parent. The Court agrees, and finds that each of the parties is a fit and capable custodial candidate.

[Father] has requested joint legal custody, testifying that he and [Mother] are able to discuss and determine major life decisions affecting [S.S.]. [Mother] testified that she and [Father] agree on little, if anything although the evidence disclosed no examples of their inability to make decisions regarding [S.S.]. While each voice minor complaints about the other as a parent, the friction in their relationship was plainly related to aspects of their personal relationship. The Court concludes that [S.S.'s] best interests will be served by an award of joint legal custody to her parents.

The most compelling statutory factors pertaining to the determination of primary physical custody are [S.S.'s] attachments to her home, her school, and this community. Although she and her parents lived in Indianapolis for about three years and moved to Bloomington about two years ago, [S.S.] likes her home, the school she attends, and, to the extent that it can make a meaningful difference to a nine year old, this community. She has established friendships here and hopes to remain here.

[Mother] testified that she would prefer that [S.S.] remain in Bloomington and in her present school. However, [Mother] testified that she feels compelled by economic circumstances to relocate to what she perceives to be the more job-rich environment of Indianapolis. However, it must be noted that [Mother's] mother and her friendships are in Indianapolis and that, too, is surely a significant factor in her anticipated plans. While she testified that she has at least one higher-paying job offer in Indianapolis, her last employment when the parties resided in Indianapolis paid no more than her present employment. The Court trusts her judgment that a move to Indianapolis may be in her best interests, but it is not persuaded that such a move is in [S.S.'s] best interests. As [Father] testified, if [S.S.] is not re-

1. The word "grandparents" is handwritten after this paragraph on the copy of the order that is included in Appellant's Appendix. Upon further review, we have determined that the original decree does not contain this handwritten notation. We caution Father's counsel to ensure in the future that documents provided to this court in an appendix are accurate copies of parts of the record on appeal, as verified by counsel.

quired to re-locate, her home, her school, her teachers, her counselors, and her friends will be "rocks of stability" in the turmoil which will result by the permanent separation of her parents.

Each of the parties testified to the tension and strain that they are each experiencing as a result of the divorce proceeding, each being sufficient to warrant professional assistance. [S.S.] is, and will, likewise experience [sic] tension and strain from the circumstances of her parents which are completely beyond her control.

[Mother] opined that [Father] would be unable to fully provide for [S.S.] were he awarded primary custody because of the travel requirements of his employment. However, the Court finds that the evidence does not support her doubts.

[S.S.'s] best interests would be served by remaining in her present environment, with both parents cooperating with one another to supplement one another's physical availability and parenting ability to provide her as needed. That may not be possible, depending upon [Mother's] ability to find suitable employment and fulfill other essential or perceived needs in this community. If she cannot do so, the Court finds by a preponderance of the evidence that [S.S.'s] best interests will be served by an award of primary physical custody to [Father].

[Mother] described [Father] as controlling and implied that he would not be likely to be considerate of [S.S.'s] need for a close and involved relationship with her if he were the custodial parent. The only aspect of the evidence which the Court discerns to be of that nature related to limitations he placed on the use of [Mother's] cellular telephone after this action was filed. However, those limitations were motivated by his efforts to gain control over spending issues which characterized the relationship. The Court makes the award of physical custody with the anticipation, and expectation, that [Father] will be cooperative, not controlling, in exercising primary physical custody.

*Appellant's Appendix* at 7–10. In light of these findings, the trial court awarded primary physical custody of S.S. to Father, with shared legal custody. Mother now appeals.

1.

Mother briefly argues that the trial court improperly failed to include the transcript from the in camera interview with S.S. in the record. She alleges that the trial court awarded custody to Father primarily on the information gained in the interview. Mother seizes on the following language in *Blue v. Brooks*, 261 Ind. 338, 342, 303 N.E.2d 269, 272 (1973): "[S]o long as the trial court's decision does not rest primarily upon the results of a private interview, it is not error to exclude the results of said interview from the record."

Our review of the record and the trial court's thorough findings reveals that the decision was not based primarily on the results of the in camera interview. In particular, both Mother and Father testified to the desirability of S.S. remaining in Bloomington. Not only did Father testify to S.S.'s very strong bond with her school and community, but Mother also testified that S.S. has close friends in Bloomington and that she would like to keep S.S. in her school.

We further observe that the trial court's findings reveal, at least to some extent, the results of the interview, *i.e.* she likes her home, school, and community, and she has established friendships in Bloomington and hopes to remain in Bloomington. It was

not necessary for the trial court to further include the transcript of the interview with S.S. in the record. *Cf. id.* (recognizing that observance of confidentiality in these interviews is vital).

2.

■ Mother also contends that the trial court abused its discretion by awarding physical custody of S.S. to Father. Mother observes that she has been the primary care provider for S.S. Moreover, she contends that her move to Indianapolis was purely speculative and that the trial court relied solely on her possible future relocation in awarding custody.

■ We initially observe that, in custody disputes, the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters. *Sebastian v. Sebastian,* 524 N.E.2d 29 (Ind.Ct.App. 1988). "As the trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony, its decision receives considerable deference in an appellate court." *Id.* at 32. On review, we cannot reweigh the evidence, adjudge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Clark v. Clark,* 726 N.E.2d 854 (Ind.Ct.App.2000), *trans. denied.* We will not reverse the trial court's custody determination unless it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom. *Klotz v. Klotz,* 747 N.E.2d 1187 (Ind.Ct.App.2001).

■ Here, the trial court sua sponte entered findings of fact and conclusions of law. In reviewing the judgment, we must determine whether the evidence supports the findings and whether the findings support the judgment. The judgment will be reversed only when clearly erroneous. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Id.*

In essence, Mother requests that we reweigh the evidence, which we cannot do. While she contends that there was no factual basis of a move in evidence, the record reveals her strong intention to move to Indianapolis. In particular, she testified that her family is in Indianapolis, that she had several job offers there, and that she had looked for an apartment in Indianapolis. Further, when asked whether she was intent to move to Indianapolis, she responded, "Yes I think that would be in everyone's best interest." *Transcript* at 48. Thus, there was ample evidence to support a finding that Mother intends to move to Indianapolis.

In this case, the trial court was faced with the difficult task of deciding between two capable and loving parents. The court considered each of the relevant statutory factors listed in Ind.Code Ann. § 31–17–2–8 (West Supp.2000) in making its decision. We find no evidence that the court engaged in a presumption favoring either parent. Rather, the court determined that the most compelling statutory factors were S.S.'s attachments to her home, her school, and the Bloomington community and her desire to stay in Bloomington. The trial court further found that relocation to Indianapolis was not in S.S.'s best interests, *i.e.* S.S.'s interests would be prejudiced by such a move.

The trial court phrased its finding that an award of primary physical custody to Father is in S.S.'s best interests as contingent on Mother's planned move. The court's order then proceeds under the premise that Mother's relocation is imminent. To the extent the court awarded custody to Father *if* Mother moves, we affirm. We observe, however, that the custody order leaves open the possibility

that Mother may not move. Yet, the trial court's findings do not provide what custody arrangement would be in S.S.'s best interests if Mother decides to stay in Bloomington. In light of this ambiguity, we remand for clarification.

Judgment affirmed and remanded.

BAKER, J., and ROBB, J., concur.