### In re the Void MARRIAGE OF Michelle (Smith) THOMAS, Appellant–Petitioner,

v.

### Leslie SMITH, Appellee–Respondent.

No. 15A04–0303–CV–139.

Court of Appeals of Indiana.

Aug. 28, 2003.

---

8. The State produced an audio-enhanced version of the tape, but it, too, is inaudible.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

John L. Kellerman, Batesville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-petitioner Michelle (Smith) Thomas appeals the trial court's ruling regarding the annulment of her marriage to appellee-respondent Leslie Smith. Specifically, Michelle claims that the trial court: (1) lacked subject matter jurisdiction to divide the assets of the parties; (2) erred in finding her son Joshua to be emancipated; and (3) erred in calculating her support obligation with respect to the other children because the amount decreed as gross income was not supported by the evidence. Finding that the parties consented to the division of the assets even though their marriage was void and that the trial court's rulings as to Joshua's emancipation and Michelle's support obligation were not clearly erroneous, we affirm.

## FACTS

On January 30, 1991, Leslie and Michelle participated in a marriage ceremony in Boone County, Kentucky. However, no legal marriage actually occurred because Michelle remained married to Albert Dula until April 15, 1991, the date the divorce decree was issued. After the marriage ceremony, Michelle and Leslie acquired the Tuppence Trail property in Lawrenceburg, Indiana, but it was held in Michelle's name alone.

They discovered the marriage was not valid in 1996 when Michelle had to produce a divorce decree in order to clear her credit record. However, neither Michelle nor Leslie thereafter attempted to enter into a valid marriage. Instead, they acted as two single persons cohabitating by filing taxes as single persons. After learning of the void marriage, they acquired another piece of real estate in June 1996 on Ventura Drive in Lawrenceburg, Indiana, which was also titled solely in Michelle's name, and they adopted three minor children. Michelle also had a son named Joshua from her previous marriage, who was nineteen years old at the time of the final hearing.

On February 20, 2001, Michelle filed a petition for annulment of her marriage to Leslie, and she sought an order for custody and support of the three minor children. However, she did not request a division of the parties' real or personal property, nor did Leslie request one. After various preliminary and pretrial hearings, a final hearing was held. On November 12, 2002, the trial court issued a decree of annulment, which awarded custody of the minor children to Leslie, provided for $169 per week in child support payments from Michelle based on her weekly income of $700, and divided Michelle and Leslie's real and personal property. Specifically, Leslie received the Ventura Drive proper-

ty, the 1983 Chevrolet pickup truck, the 1997 Mercury van, the bass boat and all funds in his 401(k) plan. Michelle received the two other parcels of real property, all cash investments, all furniture in her possession, the lawnmower, the 1987 Honda, the 1993 BMW and all funds in her 401(k) plan. The trial court also found Joshua to be emancipated because he was over eighteen years of age, not attending school, and supporting himself at the time of the hearing. Thus, the trial court did not give Michelle credit for Joshua's support against the support payments she was ordered to make for the other three children.

Michelle filed a motion to correct error on December 11, 2002, claiming that the trial court: (1) incorrectly calculated the support arrearage; (2) did not adequately separate the Sixth Street property; (3) made an incorrect finding of fact with respect to who purchased the Tuppence Trail property; (4) failed to require that Leslie refinance the Tuppence Trail property; and (5) incorrectly found that Michelle took all the furniture when she left. After a hearing, the trial court modified its decree on February 18, 2003, by correcting the amount of support arrearage and by ordering Leslie to refinance the Ventura Drive property after Michelle released the two additional mortgages she had placed on the property pursuant to the decree. Michelle now appeals.

### DISCUSSION AND DECISION [1]

#### I. Subject Matter Jurisdiction

Michelle claims the trial court erred in dividing assets between Leslie and Michelle. Specifically, Michelle argues that the trial court lacked subject matter jurisdiction to divide the property because her marriage to Leslie was bigamous and therefore void.

■ Where, as here, the facts are not in dispute, the question of subject matter jurisdiction is purely one of law. *Turner v. Richmond Power and Light Co.*, 763 N.E.2d 1005, 1007 (Ind.Ct.App.2002). Thus, we review the trial court's decision *de novo. Id.*

■ Subject matter jurisdiction is the power of a court to hear and determine cases of a general class to which the proceedings then before the court belong. *Weldon v. Univ. Reagents, Inc.*, 714 N.E.2d 1104, 1106 (Ind.Ct.App.1999). A judgment entered by a court that lacks subject matter jurisdiction is void and may be attacked at any time. *In re Marriage of Truax*, 522 N.E.2d 402, 405 (Ind.Ct.App. 1988). A bigamous marriage is void in accordance with Indiana Code section 31–11–8–2, and the courts lack subject matter jurisdiction to dissolve the marriage and order relief under the dissolution statutes because the marriage is non-existent. *Rance v. Rance*, 587 N.E.2d 150, 152 (Ind. Ct.App.1992).

■ However, those who are in bigamous relationships are not entirely without a remedy. Indiana Code section 32–17–4–1 permits parties who have never been married to file a partition action as to real property. Additionally, the trial court may equitably divide property acquired

---

1. We direct counsel for both parties to Indiana Appellate Rule 22(A), which states that citations to cases in briefs should follow the format put forth in the current edition of a Uniform System of Citation (Bluebook). We will not, on review, search through the authorities cited by a party in order to try to find legal support for his position. *Reed Sign Serv., Inc. v. Reid*, 755 N.E.2d 690, 695 n. 4 (Ind.Ct.App.2001), *trans. denied.* Leslie's brief is entirely devoid of pinpoint citations to help us determine where, within a decision, support for his contentions may be found. Michelle's brief also contains missing or incorrect pinpoint citations.

during the bigamous relationship if one of the parties requests such action. *Rance,* 587 N.E.2d at 152.

Similarly, we note that in accordance with Trial Rule 15(B), when issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Furthermore:

Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend does not affect the result of the trial of these issues.

T.R. 15(B).

In this case, while the marriage between Michelle and Leslie was void, the division of property was litigated by the consent of the parties. Michelle not only failed to object to such a division of the property, she presented extensive evidence and arguments at the hearing and in the motion to correct error as to why she was entitled to certain assets. Specifically, she offered title records, deeds and appraisals regarding the real estate. Ex. 7–10, 31. Michelle also presented lists of various items of personal property that she or Leslie had retained when they separated. Ex. 17–18. Because it is apparent that the parties agreed to have the issue of property division litigated in the trial court, Michelle cannot now be heard to complain. *See In re Marriage of Sutton v. Sutton,* 773 N.E.2d 289, 295–96 (Ind.Ct.App.2002) (holding that although wife did not petition for daughter's college expenses, the parties argued the issue, and therefore gave their implied consent to treat the issue as if it had been properly pled).

Finally, Michelle argues that the trial court could only divide property that was acquired by Leslie and Michelle's joint efforts. This is precisely what occurred, inasmuch as the trial court awarded Michelle the property that she owned prior to the purported marriage. *See* Appellant's Br. p. 17. Thus, there was no error.

## II. Joshua's Emancipation

Michelle next attacks the trial court's finding that Joshua was emancipated. In essence, Michelle claims that the evidence failed to show that Joshua was emancipated and she therefore maintains that the trial court erroneously refused to grant her a certain amount of "credit" for support payments that she was ordered to pay on behalf of the other three children.

When, as here, the trial court enters findings of fact and conclusions of law sua sponte, its judgment will only be overruled if it is clearly erroneous. *Dunson v. Dunson,* 769 N.E.2d 1120, 1123 (Ind.2002). A judgment is "clearly erroneous only if (i) the findings of fact do not support the conclusions of law or (ii) the conclusions of law do not support the judgment." *Id.* To determine whether the findings or judgment are clearly erroneous, the reviewing court considers only the evidence favorable to the judgment and all reasonable inferences flowing therefrom. *Speaker v. Speaker,* 759 N.E.2d 1174, 1179 (Ind. Ct.App.2001).

We note at the outset that because the Child Support Guidelines list prior born children as a factor in calculating the parent's gross income, Joshua's emancipation directly impacted the calculation of support here. *See* Child Support Obligation Worksheet, line 1(B). Thus, with respect to matters regarding the emancipation of a child, Indiana Code section 31–16–6–6 states in relevant part that:

(a) The duty to support a child under this chapter ceases when the child becomes twenty-one (21) years of age un-

less any of the following conditions occurs:

. . .

(3) The child:

(A) is at least eighteen (18) years of age;

(B) has not attended a secondary or postsecondary school for the prior four (4) months and is not enrolled in a secondary or postsecondary school; and

(C) is or is capable of supporting himself or herself through employment.

The uncontroverted evidence presented at trial shows that Joshua was nineteen years old on the date of the trial. Tr. p. 402. He was living with Leslie, and Joshua testified that he was no longer attending school, although he attended two semesters of college at Cincinnati State. He further acknowledged that he was employed full time. Tr. p. 408, 413. Although Michelle argues that Joshua recanted his testimony that his job is full time, a more comprehensive reading of the testimony clarifies the meaning of Joshua's statement. At the final hearing, the following exchange occurred:

MR. KELLERMAN: When's the last time you've been over to mom's house?

JOSHUA: Yesterday.

MR. KELLERMAN: Okay. Do you get down there frequently as Mr. Barlow asked you?

JOSHUA: Probably like maybe twice a week . . . something like that when . . . I got a full time job . . . I mean mostly on the weekends for . . .

Tr. p. 413. When Joshua said, "I mean mostly on the weekends," it is apparent that he was responding to counsel's question of how frequently he visited Michelle. In other words, because Joshua was employed on a full time basis, he could only visit Michelle on the weekends. As a result, we conclude that the trial court's finding that Joshua was emancipated is supported by the evidence and therefore not clearly erroneous. Thus, the trial court did not err in refusing to grant Michelle a "credit" for child support payments in light of Joshua's emancipation.

### III. Calculation of Michelle's Gross Income

■ Michelle contends that the trial court erred in calculating her gross income for purposes of determining child support. Specifically, Michelle argues that the trial court erroneously found that her gross income amounted to $700 per week because one of the pay stubs she offered into evidence reflected that she earned only $525 per week.

■ In resolving this issue, we note that for the purposes of determining the parents' income in the child support guideline calculation, the definition of "weekly gross income" is broadly defined to include not only actual income from employment, but also potential income and imputed income from "in-kind" benefits. *Lloyd v. Lloyd,* 755 N.E.2d 1165, 1169 (Ind.Ct.App. 2001) (quoting *Glover v. Torrence,* 723 N.E.2d 924, 936 (Ind.Ct.App.2000)). The Commentary to The Child Support Rules and Guidelines cautions the trial court against accepting a "snapshot" verification of the obligor's gross income before examining all the circumstances. The Commentary states that, "One pay stub standing alone can be very misleading, as can other forms of documentation." Child Support Rules and Guidelines, Guideline 3 Commentary. The Commentary goes on to suggest that, when in doubt, the trial court should review income tax returns for the last two or three years.

At trial, Michelle introduced a number of exhibits to prove her income. First, she introduced a pay stub dated June 6, 2002,

which showed her year to date earnings to be $12,176.47, or $529.41 per week. Ex. 38. Michelle also introduced a W-2 form from 2001 showing her yearly gross income to be $50,965.87, or $1019.32 per week in a fifty-week year. Ex. 37. In addition, Michelle introduced her income tax returns for the years 1996 through 1998 and 2000, showing income of $31,760, $29,976, $31,355, and $33,694 respectively. Ex 13-16. The average gross income Michelle earned during these years amounted to approximately $711.00 per week when calculated on a fifty-week year.

Such an amount falls within the scope of the evidence presented at the hearing, and it is apparent that the trial court chose to reject Michelle's "snapshot" verification of her gross income. To be sure, the trial court considered all the relevant evidence relating to Michelle's income for child support purposes, and we cannot say that the trial court's finding regarding her gross income was clearly erroneous.

### CONCLUSION

In light of the disposition of the issues, we find that the trial court properly divided the real and personal property by the implied consent of the parties. We also conclude that the trial court's finding that Joshua was emancipated was not clearly erroneous, and thus Michelle was not entitled to a "credit" for child support payments. Finally, we find that the evidence supports the trial court's finding that Michelle's gross income was $700 per week for purposes of calculating her child support obligation.

Judgment affirmed.

BROOK, C.J., and SHARPNACK, J., concur.