# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**HOLLIS A. BRUCE III**
Austin & Bruce, LLC
Corydon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF: | ) | |
| J.G. (Minor Child), | ) | |
| | ) | |
| H.G., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 13A01-1403-JP-141 |
| | ) | |
| T.C. III, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable John T. Evans, Special Judge
Cause No. 13C01-0808-JP-13

**October 7, 2014**

**OPINION–FOR PUBLICATION**

**BAKER, Judge**

H.G. (Mother) appeals the trial court's order granting the request of T.C. III (Father) to modify the parties' child custody and child support orders. Mother argues that the trial court lacked subject matter jurisdiction and that it abused its discretion in modifying the existing custody order. We find that by entering into an agreement regarding child custody and visitation as part of the paternity proceeding, Mother stipulated to the jurisdiction of the trial court over those issues. Further, finding no error in the trial court's decision to modify the order and award custody to Father, we affirm.

FACTS

J.G. was born to Mother and Father on September 29, 2005, in Louisville, Kentucky. Following J.G.'s birth, Mother and J.G. moved around the country multiple times, to multiple states, periodically returning to Indiana. Father and his mother (Grandmother) live in Crawford County, Indiana.

In August 2008, Mother filed a request for food stamps through the State of Kansas. As part of that process, Mother was required to request child support from Father. The State of Kansas forwarded the request to the Crawford County prosecutor pursuant to the Uniform Interstate Family Support Act (UIFSA)[1]. The Crawford County prosecutor opened a paternity cause, requesting that the matter be set for issues of custody, parenting time, and child support.

On January 22, 2009, the trial court entered an order establishing Father's paternity and ordering that he pay child support in the amount of $53 per week. The trial

_____

[1] Ind. Code § 31-18-7-1 et seq.

2

court also ordered, pursuant to an agreement reached by Mother and Father, that Mother would have custody of J.G. and Father would have parenting time and telephone contact with J.G. pursuant to an agreed-upon schedule. At the time the order was entered, Mother and J.G. had relocated to Ohio. At some point in 2010, they again relocated to Kansas.

Father was able to exercise parenting time sporadically from 2010 through 2012. J.G. spent all of summer 2012 with Father. Mother agreed to relocate to Indiana. Father and Grandmother enrolled J.G. in school in Marengo, where she attended for the first semester of the 2012-13 school year. Mother relocated to Indiana in November 2012 and moved into a boarding house.

At some point, Mother decided to relocate J.G. to Nevada, though she did not share her intention with Father or Grandmother. During winter break, Mother moved J.G. to Las Vegas without informing Father. He learned of J.G.'s absence when the school called after she failed to report for classes at the start of the new semester. At first, Mother claimed that J.G. was absent from school because she was sick, but eventually Father and Grandmother learned that Mother had moved J.G. to Nevada.

Immediately upon learning what had happened, Father filed a pro se minute entry with the trial court. Among other things, Father's entry stated as follows:

- "I am requesting a hearing for change of custody as soon as possible due to the neglect of [Mother], in not returning her to school after the holidays."

- "[Mother] brought [J.G.] to me at the end of May [2012] and did not return until November. During that time [Mother] stayed in Kansas, Alabama, and back to Kansas, not calling more than once or twice a month."

- "After Christmas, [Mother] got to have [J.G.] for visitation and [was] supposed to return on the 2nd of January so she could go to school on the 3rd. [J.G.] was not returned and did not go to school. We called to find out why not and [Mother] said she was too sick to go."

- "No one has heard from [Mother] since."

Appellant's App. p. 26-29.

After Father filed his minute entry, a great deal of litigation ensued, most of which—including the court's orders—are omitted from the Appellant's Appendix. At some point, the trial court ordered Mother to bring J.G. with her to the next hearing. The trial court also appointed a Guardian ad Litem (GAL) for J.G. A number of pleadings were filed by both parties in the interim, none of which are included in the appendix on appeal.

On April 24, 2013, the trial court held a hearing at which attorneys only were present. The order entered following that hearing is not included in the appendix, but the Chronological Case Summary indicates that the next hearing would be "for Court to determine punishment." Appellant's App. p. 4. The trial court eventually set a hearing on May 2, 2013, "for [Mother] to answer why she should not be held in contempt." Id. Following that hearing, the trial court entered an order—not included in the appendix— evidently finding Mother in contempt. We glean from the transcript that at some point, the trial court found that Mother's move to Nevada with J.G. was inappropriate and that

4

she was in contempt of court for failing to return the child to Indiana and for interfering with Father's parenting time. Tr. p. 15-17. The trial court also awarded temporary custody to Father. Id. The trial court imposed a ninety-day sentence as a result of the contempt, but later vacated that punishment.

On December 10 and 11, 2013, the trial court held an evidentiary hearing on Father's request to modify custody. Father, Mother, the GAL, and a number of other witnesses testified. Father asked that the trial court award him custody of J.G., Mother asked that the custody arrangement be left in place, and the GAL recommended that Father be given custody of the child. On December 16, 2013, the trial court granted Father's request, holding, in pertinent part, as follows:

> 2. There has been a substantial change in one (1) or more factors this Court may consider under IC 31-17-2-8. Modification is in the best interest of the child. It is in the child's best interest that Father have sole legal and physical custody. Therefore this Court grants Father's motion to modify custody and grants Father [] sole legal and physical custody of [J.G.].
>
> ***
>
> 4. Mother's parenting time is temporarily restricted based upon:
>
> a) Mother's moving the child from Indiana to Nevada without telling Father that they were leaving or notifying him where they had gone; and,
>
> b) Mother's failure to return the child to Indiana contrary to this Court's orders.
>
> Mother's Christmas 2013 and Spring Break 2014 parenting times shall occur in the Indiana and Northern Kentucky area. Mother shall not remove the child from said area during such times. . . .

5

Mother's 2014 Summer parenting time, and all parenting time thereafter, may occur elsewhere including at her residence in Nevada.

***

7. Mother shall pay child support for the benefit of [J.G.], to Father . . . in the amount of $33 per week. . . .

8. Mother is determined to have been in contempt of this Court's orders concerning Father's parenting time. Mother's contempt is now moot as a result of this Court's October 29, 2013, Order After Hearing and the make-up parenting time Father has exercised since taking the child into his possession.

9. Mother has purged herself of her previously determined contempt for failure to appear in Court with the child. Mother's jail sentence for contempt is vacated.

Appellant's App. p. 8-11. Mother now appeals.

## DISCUSSION AND DECISION

### I. Subject Matter Jurisdiction

First, Mother argues that the trial court lacked subject matter jurisdiction over this cause. Subject matter jurisdiction refers to "the power of a court to hear and determine cases of a general class to which the proceedings then before the court belong." Marriage of Thomas v. Smith, 794 N.E.2d 500, 503 (Ind. Ct. App. 2003). A judgment that is entered by a court lacking subject matter jurisdiction is void and may be attacked at any time. Id. Our Supreme Court has held that "[r]esolution of the subject matter jurisdiction issue involves determining whether the claim advanced falls within the general scope of authority conferred upon the court by the constitution or statute." Williams v. Williams, 555 N.E.2d 142, 144-45 (Ind. 1990).

6

This cause was originally opened up as a paternity cause pursuant to the UIFSA. The UIFSA primarily governs proceedings regarding spousal support, child support, and paternity. Ind. Code § 31-18-3-1. The section on UIFSA jurisdiction states as follows: "Nothing in this chapter shall be construed to confer jurisdiction on the court to determine issues of custody, parenting time, or the surname of a child. However, the parties may stipulate to the jurisdiction of the court with regard to custody, parenting time, or the surname of a child." I.C. § 31-18-3-1.

Mother argues that because there was never an explicit stipulation that the trial court would have jurisdiction over anything other than paternity and child support, the trial court lacked subject matter jurisdiction to consider those matters. We cannot agree. In addition to the trial court's order regarding paternity and child support, it entered a visitation order. The visitation order states that the parties had entered into an agreement regarding custody and parenting time and placed it on the record, and the trial court then approved the agreement and incorporated it into an order. Appellant's App. p. 23-25.

By entering into an agreement regarding custody and visitation, placing it on the record in the paternity proceeding, and having the trial court approve the agreement and incorporate it into an order in the paternity proceeding, the parties implicitly stipulated to the trial court's subject matter jurisdiction regarding visitation and custody under the UIFSA. That stipulation had full force and effect throughout the continuing litigation of those same issues over the years. Therefore, we decline to reverse on this basis.

7

## II. Modification of Child Custody

Next, Mother argues that the trial court erred by modifying the existing order regarding child custody.[2]  We review "custody modifications for abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters." K.I. ex rel. J.I. v. J.H., 903 N.E.2d 453, 457 (Ind. 2009).  A trial court may modify a child custody order upon a showing that modification is in the child's best interests and that there has been a substantial change in the relevant factors.  Ind. Code § 35-14-13-6.  The trial court shall consider all relevant factors, including:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A)   the child's parents;
>> (B)   the child's siblings; and
>> (C)   any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

---

[2] Mother does not appeal anything in the order related to her parenting time or child support obligation.

8

I.C. § 31-14-13-2.

Here, the record reveals that Mother has a history of transience. Over the years, she and J.G. have had countless residences, in multiple states, with many different roommates. She and J.G. were even homeless for a period of time. Mother also has an unstable employment history, and at the time of the hearings herein, was unemployed and had been for some time. When Mother brought J.G. to Father's care in the summer of 2012, J.G. had ringworm in multiple places and was covered with bedbug bites over her whole body. In the summer of 2012, when J.G. was living with Father, Mother agreed to relocate to Indiana and asked that J.G. be enrolled in school in Indiana. Then, during winter break, Mother relocated J.G. out of state without informing Father, lied to him about J.G.'s absence from school, and prevented Father from having further contact with J.G. at that time.

Father, on the other hand, has stable employment. While his hours as a truck driver cause him to have long working days, he is always home in the evenings and has a good support system in place, including his wife and Grandmother, to help care for J.G. The GAL testified that J.G. was very happy at school in Indiana, achieved good grades, and was not having any trouble in school. Tr. p. 135. The GAL also testified that J.G. was "really close" to Father and had "genuine" affection for both Father and his wife. Id. at 136. The GAL further testified that Father's home is appropriate and J.G. has her own bedroom with appropriate clothing and maintains good hygiene in Father's care. The

9

GAL concluded that the stability offered by Father was preferable for J.G. to the instability she experienced with Mother.[3]

Mother makes much of the fact that Father did not file a motion opposing the relocation pursuant to Indiana Code section 31-17-2.2-1(b). Filing such a motion would have been impossible, however, given that Mother did not notify Father or the trial court before the relocation as required by subsection (a) of that statute. Furthermore, we note that the statute contemplates that modification may be warranted when a relocation occurs. I.C. § 31-17-2.2-1(b). Modification is no less warranted when, as here, the relocating parent violates the statute by failing to provide the requisite notice of the move.

We find that the evidence in its totality supports the trial court's conclusions that modification was in J.G.'s best interests and that there had been a substantial change in one or more of the above factors. See In re Paternity of M.P.M.W., 908 N.E.2d 1205, 1208-09 (Ind. Ct. App. 2009) (finding that modification to award father custody was appropriate where, among other things, mother had absconded with the child to another state and deprived father and child of their relationship). Over time, Mother's continued transience and lack of stable income caused a substantial change affecting Father's wishes, J.G.'s mental and physical health and well-being, and J.G.'s best interests. Likewise, Mother's actions that deprived Father of his relationship with J.G. constituted a

---

[3] Mother argues that the GAL's report was inadmissible hearsay. The report, however, was never offered or admitted into evidence as an exhibit. Instead, the GAL testified. At points during the GAL's testimony, Mother objected based on hearsay, and the trial court sustained those objections. We need not consider whether the report itself was hearsay, inasmuch as it was not admitted into evidence.

substantial change affecting the above factors. Therefore, we do not find that the trial court erred in modifying the existing custody order.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.