## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2015, 8:58 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Katherine A. Harmon
Jared S. Sunday
Mallor Grodner LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Brooke E. Bernhardt
The Law Office of Melissa Winkler-York, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kari Poe,

*Appellant-Petitioner,*

v.

Robert Poe,

*Appellee-Respondent.*

June 29, 2015

Court of Appeals Case No.
49A02-1409-DR-636

Appeal from the Marion Superior Court

Lower Court Cause No.
49D03-1210-DR-39179

The Honorable Patrick L. McCarty, Judge

**Pyle, Judge.**

## Statement of the Case

[1]    Kari Poe ("Mother") appeals the trial court's grant of primary physical custody over her minor daughter ("H.P.") to H.P.'s father, Robert Poe ("Father"). She argues that there is no evidence that the trial court considered the statutory

factors it was required to consider to determine H.P.'s best interests. Alternatively, she raises several arguments concerning the weight the trial court assigned to the evidence and statutory factors. We conclude that there is no evidence that the trial court failed to consider the statutory factors for determining H.P.'s best interests, and the trial court did not abuse its discretion in weighing the statutory factors when it awarded Father primary physical custody.

We affirm.

## Issue

> Whether the trial court abused its discretion when it awarded Father primary physical custody of H.P.

## Facts

Mother and Father (collectively, "the parents") married on March 26, 2005, and had one daughter together, H.P., who was born in May 2006. Mother filed a petition for the dissolution of her marriage to Father on October 9, 2012, when H.P. was six years old. In lieu of a preliminary hearing, the parents entered into an agreed preliminary entry on December 7, 2012, which provided that Mother would have physical custody of H.P. and that the parents would share legal custody. It also established that:

> The Father shall have parenting time beginning every Monday after school or 6:00 p.m., if school is not in session, through Wednesday at 6 P.M. and Thursdays at 6:00 P.M. through Friday at 6:00 P.M. The Mother shall have [H.P.] every Friday at 6:00 P.M. until Monday morning when minor child is taken to

school. If school is not in session, the Mother shall have minor child until Father is off of work. The Mother shall also have every Wednesday at 6:00 P.M. overnight until Thursday at 6:00 P.M. The Father shall drop off the minor child at the beginning of parenting time every Thursday and Monday, either at the school or the Father's residence if school is not in session.

(App. 11-12). However, the parents did not follow this agreed schedule.

In May 2013, Mother moved from Mooresville, Indiana, where Father lives, to Franklin, Indiana, to live with her significant other, Jason Gosman ("Gosman"). Mother and Gosman lived in a house in Franklin with Gosman's daughter from a previous relationship, Mother's child with Gosman, who was born in July 2013, and H.P. when Mother had custody. Although Mother moved to Franklin, H.P. continued to attend school in Mooresville. The parents arranged their custody schedule so that Mother would pick up H.P. from her school in Mooresville on Monday through Thursday afternoons, take care of her each night, then drop her off at Father's house or school the next morning. Father would pick up H.P. from school on Friday nights, take care of her over the weekend, and then take her to school Monday mornings.

On August 15, 2013, Father filed a motion requesting a custody evaluation by the Domestic Relations Counseling Bureau ("DRCB"). The trial court granted the motion and referred the matter to the DRCB on September 17, 2013. The DRCB evaluator, Leo Flannelly ("Flannelly"), interviewed H.P., the parents, Gosman, and Father's significant other, Ashleigh Lyburger ("Lyburger"). He found that H.P. had a good relationship with both of her parents and with both

Gosman and Lyburger. However, then seven-year-old H.P. told Flannelly that she "want[ed] [Lyburger] to watch [her]" and that she wanted to live with Father. (Respondent's Ex. A). She said she was "tired" of the transportation between her parents' residences and school and was "sick of going one place and then another." (Respondent's Ex. A). Mother later testified that she had to commute forty-five to fifty minutes each way with H.P. every morning and afternoon to take her to and from school. Notwithstanding H.P.'s wishes, Flannelly ultimately recommended in his DRCB report that the parents share joint custody and that Mother have primary physical custody.

[5] Subsequently, on April 21, 2014, the trial court entered a decree for the dissolution of the parents' marriage, which incorporated a partial settlement agreement the parents had agreed upon through mediation. The settlement agreement was partial because it did not resolve any of the issues regarding parenting of H.P. As a result, on June 17, 2014, the trial court held a hearing to establish custody.

[6] At the hearing, the primary point of contention between the parents was where H.P. should attend school. Father desired H.P. to remain in Mooresville schools, where she had attended from kindergarten through second grade, but Mother desired H.P. to enroll in the Edinburgh school system, which was closer to where Mother lived. Father testified that the parents had agreed when they first separated that they would keep H.P. in Mooresville schools "no matter what." (Tr. 67). He said that, in spite of this agreement, Mother had enrolled H.P. in Edinburgh schools for a week and a day at one point when she first

moved to Franklin without discussing the matter with him. However, he acknowledged that when he objected to the arrangement, Mother had re-enrolled H.P. in the Mooresville school system.

[7] Another subject at the hearing was the parents' respective schedules. Mother testified that she believed it would be in H.P.'s best interests if she had physical custody because, among other reasons, her schedule was more open than Father's. She said that she had just graduated from college the week prior and was staying at home full time. She had previously served in the military but had been medically discharged due to a shoulder injury. Father testified that his job schedule varied depending on the time of year and that, at some points of the year, he could not get home until 10:00 p.m. However, he said that he could likely get home by 7:00 or 8:00 p.m. for H.P.'s dinner and bedtime routines ninety percent of the time during the school year. He also said that he was willing to allow Mother to have custody of H.P. in the afternoons until he could get home. Father's then-wife, Lyburger, testified that she worked until 7:00 p.m. on Mondays, Tuesdays, and Thursdays and until 3:00 p.m. on Wednesdays.

[8] Flannelly also testified at the hearing and discussed his evaluation of the parents and his DRCB report. He said that he had talked with Mother about her mental health during his evaluation and found that she had undergone treatment at St. Francis Behavioral Health for issues "related to [post-traumatic stress disorder ("PTSD")] and other matters[,]" including anxiety. (Tr. 45). He said that he had received a diagnosis from St. Francis that Mother had

borderline personality disorder, which he explained meant that Mother could be a "black-and-white thinker." (Tr. 47).

[9] With respect to the two custody alternatives, Flannelly said that H.P. had a positive relationship with both of her parents and with Gosman and Lyburger. He recounted that H.P. had told him of one incident when Mother and Gosman had gotten into an argument, and Gosman had thrown her books off the roof, but he said that he did not get the feeling from H.P. "in any way, shape or form" that she was afraid to live with Mother and Gosman. (Tr. 43). In addition, he did not detect that H.P. felt any indication or discomfort with Father and Lyburger.

[10] At the conclusion of the hearing, the trial court took the matter under advisement and told the parents that its decision would be based on its opinion of H.P.'s best interests. The trial court acknowledged that both Mother and Father seemed to be reasonable people and "thoughtful parents who want the best for [their] daughter." (Tr. 86). Subsequently, on August 21, 2014, the trial court entered an order finding it in H.P.'s best interests for the parents to have joint legal custody but for Father to have primary physical custody. The trial court ordered H.P. to remain in Mooresville schools and for Mother to have parenting time with H.P. in accordance with the Indiana Parenting Time Guidelines, plus any additional parenting time the parents could agree upon. Mother now appeals. Additional facts will be provided as necessary.

## Decision

On appeal, Mother argues that the trial court abused its discretion when it granted Father primary physical custody of H.P. Specifically, she asserts that there was no evidence that the trial court considered the statutory factors in determining H.P.'s best interests. She also argues that the trial court's decision was an abuse of discretion because the trial court failed to attribute appropriate weight to particular statutory factors. We will address each of these arguments in turn.

First, we observe that in custody disputes "the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters." *Speaker v. Speaker*, 759 N.E.2d 1174, 1179 (Ind. Ct. App. 2001). "'As the trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony, its decision receives considerable deference in an appellate court.'" *Id.* (quoting *Sebastian v. Sebastian*, 524 N.E.2d 29, 32 (Ind. Ct. App. 1988)). On review we cannot reweigh the evidence, judge the credibility of the witnesses, or substitute our judgment for that of the trial court. *Id.* We will not reverse the trial court's custody determination unless it is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom. *Id.*

In an initial custody determination, such as here, there is no presumption favoring either parent. *Gonzalez v. Gonzalez*, 893 N.E.2d 333, 335 (Ind. Ct. App. 2008). The court assumes that the parties are equally entitled to custody but

makes a decision based on which parent would better rear the child. *Id.* This decision must be based on the best interests of the child. I.C. § 31-17-2-8 ("The court shall determine custody and enter a custody order in accordance with the best interests of the child."). INDIANA CODE § 31-17-2-8 delineates several statutory factors the trial court must consider in order to determine the child's best interests. They are:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>> (A) the child's parent or parents;
>> (B) the child's sibling; and
>> (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>> (A) home;
>> (B) school; and
>> (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian . . . .

I.C. § 31-17-2-8. When evaluating these factors, a trial court must consider all evidence from the time of the child's birth. *Hughes v. Rogusta*, 830 N.E.2d 898, 902 (Ind. Ct. App. 2005).

[14] Mother's first argument on appeal is that there is no evidence that the trial court considered the statutory factors when it awarded primary physical custody to

Father. However, she recognizes that the trial court is not required to make specific findings, and she does not point us to any legal requirement that, in addition to considering the factors, the trial court must explicitly establish that it has done so. Instead, she contends that it is evident that the trial court did not consider the factors. Specifically, Mother asserts that the trial court did not consider the "wishes of the child's parent or parents," and, according to her, the trial court ignored her and Father's wishes. I.C. § 31-17-2-8. As a basis for this argument, she claims that she requested primary custody and Father requested only equal custody, so the parents' wishes "overlap[ped] as to a minimum of equal custody and parenting time of [H.P.]," and the trial court did not grant her the minimum of equal custody. (Mother's Br. 9-10).

[15] In response, Father argues that, even though he asked for joint physical custody of H.P. at the hearing, he indicated to Flannelly that he was seeking primary physical custody, and Flannelly included that information in the DRCB report that the trial court considered.[1] Father also notes that he submitted to the trial court a child support worksheet on which he gave Mother parenting time credit for having custody of H.P. for 181-183 overnights per year. Father asserts that a custodial parent may not receive parenting time credit, so this worksheet demonstrated his desire to have primary physical custody of H.P. *See* Ind. Child Support Guideline 3(G)(4) (stating that "[t]he court should grant a credit

---

[1] Also in the report, Flannelly mentioned that Father had said he "would accept joint custody, but indicated he would seek sole custody 'if necessary.'" (Respondent's Ex. A). It is apparent from the context of the excerpt that Father might have been discussing legal, not physical custody.

toward the total amount of calculated child support for either 'duplicated' or 'transferred' expenses incurred by the noncustodial parent.").

[16] We agree with Father that, even if he requested only equal physical custody, his statements to Flannelly, which the trial court considered, demonstrated that he desired primary physical custody of H.P.[2] Regardless, even if both parents had sought equal custody, the trial court is not required to abide by the wishes of the parents. *Keen v. Keen*, 629 N.E.2d 938, 940 (Ind. Ct. App. 1994). The "wishes of the child's parent[s]" is only one of several factors to be considered in determining the best interests of a child. *See* I.C. § 31-17-2-8. Therefore, the trial court's award of physical custody to Father is not necessarily evidence, as Mother suggests, that the trial court failed to consider the statutory factors in determining H.P.'s best interests. Because Mother does not point to, and we do not find, any other evidence indicating that the trial court failed to consider the statutory factors, we conclude that it did not abuse its discretion on that basis.

[17] Alternatively, Mother raises several arguments that essentially concern the weight the trial court should have assigned the statutory factors and the evidence. For instance, she argues that: (1) H.P.'s wishes should not have been determinative because H.P. was only seven years old when she said that she

---

[2] We need not address Father's parenting time argument because we agree that his desire to have full custody was apparent from the DRCB report, but we do note that under the Indiana Child Support Guidelines, "[p]arenting time is considered equally shared when it is 181 to 183 overnights per year." Child Supp. G. 6 cmt. Therefore, his allocation of parenting time credit to Mother for 181 to 183 overnights per year also would support a request of equal custody.

wished to remain in Mooresville schools, and H.P. could remain in Mooresville schools even if Mother were the primary physical custodian; (2) the trial court should not have considered Mother's mental history because there was not much evidence concerning that history; and (3) Father's work schedule was not in H.P.'s best interests because he will be unavailable to take care of her for periods of time after she gets home from school. We will not address these arguments in detail because we have previously held that while the trial court must consider each of these statutory factors in making a best interests determination, it is well within the trial court's discretion to place greater weight on certain evidence and certain factors. *Gilbert v. Gilbert*, 7 N.E.3d 316, 322 (Ind. Ct. App. 2014).

[18] Instead, we conclude that the trial court did not abuse its discretion because its decision was not "clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom." *Speaker*, 759 N.E.2d at 1179. With respect to the statutory factors, H.P. was clear about her wish to stay in Mooresville schools. While Mother notes that H.P. could continue school in Mooresville even if Mother had primary custody, H.P. also clearly stated that she was tired of the commute every day between Mother's house and her school, which Mother acknowledged amounted to forty-five to fifty minutes each way.

[19] As for the other statutory factors, H.P. had a good relationship with Father and his wife, and she stated that she wanted to live with Father and for "[Lyburger] to watch [her]." (Respondent's Ex A.). She was also adjusted to her home,

school, and community and had friends in Mooresville. Further, there was no evidence that Father had an unstable mental history or a history of domestic abuse towards either H.P. or Lyburger.

[20] In contrast, there was some evidence that Mother had suffered from PTSD, borderline personality disorder, and anxiety in the past, and there was also evidence that she had a pattern of fighting with Father. Father testified at the hearing that once when the parents were exchanging H.P., Mother and Father got into an argument, and Mother pushed Father, which resulted in the filing of a police report. There was also evidence at the hearing that at one point there was a fight between Mother and Gosman that resulted in Mother's books being thrown off of their roof. While we agree with Mother that there was not an excessive amount of evidence against her on either of these factors, there was some evidence.

[21] Fortunately, we do agree with the trial court that this is not a situation where one parent is markedly unfit to act as the primary physical custodian. It is clear that both parents love H.P. and are able to properly care for her. Also, as Mother notes, although there is evidence in the record that Mother might have a history of mental illness and fighting with Father, that evidence is not excessive.

[22] Nevertheless, as we noted above, "the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters," sometimes between two perfectly adequate alternatives. *Id.* And, here, we cannot conclude that the

trial court's decision was "clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences drawn therefrom." *Id.* It was within the trial court's discretion to determine that H.P.'s desire to avoid a long commute to school every day and her desire to remain in Mooresville, in combination with the other statutory factors, outweighed evidence such as the fact that Father will not be home immediately when H.P. gets home from school. *See Gilbert*, 7 N.E.3d at 322. Accordingly, we conclude that the trial court did not abuse its discretion when it granted Father primary physical custody of H.P.

[23] Affirmed.

[24] Crone, J., and Brown, J., concur.