## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 03 2017, 5:59 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory K. Blanford
The Blanford Law Office
South Bend, Indiana

ATTORNEY FOR APPELLEE

Robert J. Palmer
May Oberfell Lorber
Mishawaka, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Paternity of N.E., by Next Friend, | March 3, 2017 |
| | Court of Appeals Case No. 71A03-1605-JP-1066 |
| Jody W. Elkins, | Appeal from the Saint Joseph Superior Court |
| *Appellant-Petitioner,* | The Honorable Steven L. Hostetler, Judge |
| v. | Trial Court Cause No. 71J01-0905-JP-534 |
| Jennifer L. Hahn, f/k/a Jennifer L. Benson, | |
| *Appellee-Respondent* | |

**Vaidik, Chief Judge.**

# Case Summary

[1] Jody Elkins ("Father") appeals the trial court's denial of his request to modify physical custody of his daughter, N.E. Father contends that the evidence does not support the court's findings of fact and that the findings of fact do not support the judgment. Finding no error, we affirm.

# Facts and Procedural History

[2] Jennifer Hahn ("Mother") gave birth to a daughter, N.E., on March 21, 2008. At the time of N.E.'s birth, Mother and Father were no longer romantically involved, but Father established paternity in 2009. Since N.E.'s birth, Mother and Father have engaged in a custody battle. Both parents have alleged that the other has endangered N.E., including allegations of sexual and emotional abuse. As a result, N.E., who is currently eight years old, has been questioned multiple times by the Department of Child Services (DCS) and law-enforcement personnel, undergone six physical examinations and one psychosexual evaluation, and testified in court.

[3] In May 2010, Mother and Father agreed to joint legal and physical custody, with each having equal parenting time. This agreement was in place for less than a year when, in January 2011, Father petitioned the court to modify physical custody and award him primary physical custody of N.E. Roughly two weeks before the hearing on Father's motion, DCS received a report that Father had sexually molested N.E. Father's parenting time was suspended

during the investigation, and Mother was awarded sole legal custody. The court delayed the custody hearing pending DCS's findings. The molestation claim was unsubstantiated, and the court reset the hearing. Approximately one week before the reset hearing, DCS received another report alleging that Father had sexually abused N.E. The court, again, delayed the hearing pending DCS's findings. This claim was also unsubstantiated. In June 2013, a temporary order was entered allowing Father unsupervised parenting time every other weekend; his original motion to modify physical custody remained pending.

[4] Mother and Father attended mediation to try and resolve their custody battle, but they were unsuccessful. In August 2014, following the unsuccessful mediation, the court appointed a Guardian Ad Litem (GAL) for N.E. and instructed the GAL to investigate the issues of custody and parenting time. While the GAL was conducting her investigation, N.E. began seeing a therapist. A month after N.E. started therapy, the GAL submitted her initial report to the court, recommending that Father have a few extra hours with N.E. on his parenting weekends.

[5] During a therapy session in July 2015, N.E. told the therapist that she had lied when she said that Father had sexually abused her. The therapist informed Mother and Father that N.E. had recanted the allegations against Father (which had already been unsubstantiated by DCS). Mother asked N.E. why she lied about being abused. N.E. responded that she did not lie about the abuse, but rather Father had told her to recant and say that he did not abuse her. *See* Tr. p. 265-66. Meanwhile, the GAL continued with her investigation, including

talking with N.E.'s therapist, and submitted to the court a supplemental report in December 2015. The GAL again recommended that Father have more parenting time with N.E. However, the report explicitly stated that Father should not have primary physical custody, as requested in his motion to modify custody, because N.E. would perceive this change as a form of punishment and loss of Mother's love.

[6] In January 2016, N.E. began exhibiting behavioral problems—N.E. pulled down her pants to show her buttocks to some girls in her class; she wrote a note asking a classmate if he wanted to have sex with her; she had begun fighting classmates; and she threatened to kill herself if she had to go to Father's house. As a result of these behaviors, N.E. was placed on medication. N.E.'s behavior improved drastically due to the medication, so much so that her teacher sent home a letter in March detailing how much better N.E. was doing in class. *See id.* at 259.

[7] In April 2016, more than five years after filing a motion to modify custody, the court held a hearing on Father's motion. Over the course of the two-day hearing, the court heard testimony from the GAL and N.E.'s therapist. Both testified that Mother and Father needed help parenting. Mother had made inappropriate comments to N.E. regarding these proceedings and led N.E. to believe that Mother lost her job because she had to go to court to fight for custody (Mother, in fact, had not lost her job). Father, on the other hand, continued to hold grudges against Mother and refused to co-parent with her. He videotaped every transfer of N.E., had not attended a school event since

dropping N.E. off for her first day of first grade, and did not attend special events in N.E.'s life, such as school functions or soccer and baseball games. They also noted that N.E. had a strained relationship with Father's wife. *See id.* at 54 (stepmother called N.E. a "liar" to her face, is overwhelmed by N.E., and needs support to help her parent); *id.* at 153 (stepmother told N.E. to "shut the F up"); *id.* at 158 (stepmother needs parenting classes to address her problems with N.E.). Following the hearing, the court received notice of allegations that stepmother struck N.E. on April 25 and 26, just days after the hearing ended. Appellant's App. Vol. II p. 44.

[8] Regarding physical custody, both the GAL and the therapist testified that N.E. was struggling emotionally due to the constant fighting between Mother and Father. They also stated that N.E. loves both of her parents, but N.E. is afraid that if Father is given primary physical custody she will never see Mother again and will perceive the change in custody as a form of punishment. Nevertheless, both the GAL and the therapist recommended (contrary to the GAL's reports) that Father have primary physical custody of N.E. and that Mother have supervised parenting time for a few hours each week. The custody change was recommended as a way to force Mother to co-parent with Father. Even with the recommended change, both the GAL and the therapist stated that N.E. needed to maintain a relationship with Mother and continue to attend school in Mother's district.

[9] After the hearing, the trial court issued findings of fact and conclusions. The court ultimately ordered that Mother should retain primary physical custody of

N.E. In reaching this conclusion, the court noted that the therapist's "recommendations are subject to question." *Id.* at 38. The court questioned the recommendations because: the therapist largely blamed Mother for N.E.'s issues and ignored that "Father's responsibility is also readily apparent"; the therapist reached her "unusual" recommendation "not because she believes that parenting time by Mother would be harmful to [N.E.], but because she believes that is the only way Mother will become willing to co-parent [N.E.]"; and the therapist accepted "at face value [N.E.'s] recanting of her molestation report," even though N.E. later recanted her recantation. *Id.* 37-38. The court also "carefully scrutinized" the GAL's recommendations because they were based largely in part on the therapist's recommendations and N.E.'s behavioral problems at school. *Id.* at 38. The court concluded that no evidence was presented that "N.E.'s problems at school are the result of being in Mother's primary physical custody. Nor was there any objective evidence that [N.E.'s] problems would be solved by placing [her] in the primary physical custody of Father." *Id.* However, evidence was presented to show that there has been "significant improvement now that [N.E.] is on medication." *Id.* Based in part on the allegations that stepmother had recently struck N.E., the court ordered the GAL to investigate Father's home and took away Father's overnight parenting time. Father's parenting time was reduced to every other Saturday and Sunday from 10:00 a.m. to 7:00 p.m.

[10] Father appeals.

# Discussion and Decision

[11] Father contends that the trial court erred when it denied his request to modify primary physical custody of N.E. Custody modifications are reviewed "for abuse of discretion with a preference for granting latitude and deference to our trial judges in family law matters." *In re Paternity of J.G.*, 19 N.E.3d 278, 282 (Ind. Ct. App. 2014). When the trial court has entered findings of fact and conclusions, "we first must determine whether the evidence supports the findings and second, whether the findings support the judgment." *Albright v. Bogue*, 736 N.E.2d 782, 787 (Ind. Ct. App. 2000). "We consider the evidence favorable to the judgment and all reasonable inferences following therefrom." *Id.* "[W]e are constrained to neither reweigh evidence nor judge the credibility of witnesses." *Id.*

[12] The facts of this case sadly are the result of what happens when parents, after splitting up, refuse to co-parent and focus on the best interests of the child and instead continually place the child in the middle of their fighting. In these situations, the trial court is left to sort through a complex history of parental fights to determine what is in the best interests of the child. Here, the trial court was faced with an extensive history of allegations by both parents against one another claiming sexual and emotional abuse of N.E., and it ultimately concluded that N.E.'s best interests were served with Mother retaining primary physical custody. We find no reason to overturn the trial court's decision.

[13]     Father makes several contentions to support his overall argument that the court's findings of fact do not support its judgment.[1] First, he argues that the court's finding that "[t]he problems between the minor child and [stepmother] are particularly serious," Appellant's App. Vol. II p. 33, is not supported by evidence. But during the hearing, there was ample testimony that stepmother struggled to parent N.E., including calling N.E. a "liar" to her face and having parenting classes recommended to her in order to address her issues with N.E. Tr. pp. 54, 158. Furthermore, after the hearing concluded, the court received notice of allegations that stepmother had struck N.E. on two separate occasions. Appellant's App. Vol. II p. 44. We find that there is sufficient evidence to support this finding.

[14]     Next, Father argues there is no evidence to support the trial court's characterization that his responsibility for N.E.'s behavioral issues is "readily apparent." Appellant's Br. pp. 19-20. In his brief, Father acknowledges that the court's statement goes on to say, "Father has not attended a single activity (including parent-teacher conferences) at [N.E.'s] school in the three years [N.E.] has attended school. Father has attended not a single soccer game and only one baseball game. Father has gone long stretches with no parenting time

---

[1] One such contention asks this Court to review the record and enter additional findings of fact that support his modification request. This is another way of asking the Court to reweigh the evidence, which we will not do.

at all." *Id.*; Appellant's App. p. 37. There is sufficient evidence to support the court's characterization.

[15] Last, Father contends that the multiple negative findings of fact regarding Mother's parenting of N.E. are evidence that Mother should not have primary physical custody of N.E. The court's findings of fact included statements that negatively reflected on **both** Mother's and Father's ability to parent. Trial courts are put in a difficult position when hearing custody cases like this one, where, instead of co-parenting for the sake of N.E., Mother and Father have continually engaged in legal battle after legal battle and placed N.E. at the center of their conflict. The trial court weighed the options before it and issued a well-thought-out decision that focused on the best interests of N.E. The judgment is based on those interests and the evidence presented. In its analysis the court stated, "But it is far from clear that Father having custody of N.E. would present a better situation. . . . [T]here was no evidence presented that N.E.'s problems at school are the result of being in Mother's [primary] physical custody." *Id.* at 37-38. Accordingly, the findings of fact are supported by evidence in the record, and the judgment is supported by the findings of fact.

[16] Mother, in her response to Father's appeal, points out that we have the discretion to remand this proceeding for an award of appellate attorney's fees. We decline her invitation to remand.

[17] Affirmed.

Bradford, J., and Brown, J., concur.